8535-4\MMC

UNITED STATES DISTRICT COURT
SUPREME COURT OF THE STATE OF NEW YORK
------------------------------------------------------------------------x
MELINDA THEW COOPER,

                                Plaintiff,

    -against-

LARRY THEW; JOHN THEW; LARRY THEW, as Executor of the Estate of Richard Thew; JOHN THEW, as Executor of the Estate of Richard Thew; LARRY THEW, as successor co-trustee of the Gerald Thew Family Trust;  JOHN THEW, as successor co-trustee of the Gerald Thew Family Trust; LARRY THEW as co-trustee of the R.W. Thew Trust a/k/a the R.W. Thew Irrevocable Living Trust; JOHN THEW, as co-trustee of the R.W. Thew Trust a/k/a the R.W. Thew Irrevocable Living Trust; THE CURRY FAMILY PARTNERSHIP; TACONIC 82, INC.; LARRY THEW, as an officer and/or director of TACONIC 82, INC.; JOHN THEW, as an officer and/or director of TACONIC 82, INC.; REED SMITH, LLP; STEPHEN P. O'HARE, ESQ.; WILLIAM J. O'HARE, ESQ.; O'HARE & O'HARE, P.C.; MICHELE THEW; and PATRICIA CARSON,

                                Defendants.
------------------------------------------------------------------------x

**AFFIDAVIT OF RICHARD R. DuVALL IN OPPOSITION TO MOTION BY REED SMITH LLP TO DISMISS THE COMPLAINT**

04 CV 8928

Assigned Magistrate:
   Hon. Colleen McMahon, USDJ

STATE OF NEW YORK    )
                              ) SS.:
COUNTY OF DUTCHESS  )

     Richard R. DuVall being duly sworn, deposes and says:

     1.     I am a member of the law firm of McCabe & Mack LLP, attorneys for plaintiff in the above referenced matter.

     2.     Except where otherwise indicated, I make this affidavit of my own personal knowledge based upon my review of the documents annexed hereto.

     3.     The memorandum of law accompanying these papers sets forth the legal arguments in response to the legal points and authorities in Reed Smith's motion.

     4.     Before addressing the fairly narrow grounds which Reed Smith relies upon to obtain both dismissal of the complaint for failure to state a claim and, in addition, summary judgment dismissing plaintiff's claims against it, some family history is in order.

     5.     Doris Thew and Gerald Thew, both now deceased, had four (4) children: Richard Thew, Joan Thew Decker, Garret Lewis Thew and Sands Raymond Thew.  (See

8535-4\MMC

Decision and Order dated October 28, 2004 of Hon. James D. Pagones, Dutchess County Surrogate's Court, Exhibit "1" hereto at page 2.)

6. Richard Thew and his late wife Patricia Thew had four (4) children: Larry, John, Melinda and Kevin.

7. During his lifetime, and after the death of Doris Thew, Gerald Thew (father of Richard, and Grandfather of plaintiff Melinda Thew Cooper and defendants Larry and John Thew) created a Trust under an instrument dated April 1, 1994. A copy of the Declaration of said Trust, which will be referred to herein as the Gerald Thew Family Trust, is annexed hereto as Exhibit "2".

8. During his lifetime, the Gerald Thew Family Trust was funded by the grantor, Gerald R. Thew, with, at a minimum, several hundred acres of real estate described in a Deed dated April 1, 1994, recorded November 13, 1996 in Liber 1986 of Deeds at Page 452 in the Dutchess County Clerk's Office. A copy of said Deed is annexed hereto as Exhibit "3".

9. Pursuant to the terms of the Declaration of Trust (Exhibit "2"), Gerald R. Thew retained a life interest in the trust estate. (See Article First of Exhibit "2"). Gerald Thew and Richard Thew were the two Trustees, and the net income and principal, as directed by Gerald Thew, were to be paid to Gerald Thew and/or any other parties as Gerald Thew was to direct.

10. Gerald Thew died August 7, 1999. (Pagones Decision, Exhibit "1" page 2).

11. The Gerald Thew Family Trust is silent as to what authority, if any, the surviving Trustee, Richard Thew, was to have to distribute either income or principal from the Gerald Thew Family Trust. Article Second of the Trust describes Richard Thew's authority to pay income or principal if necessary to or for the benefit of Gerald Thew while Gerald Thew is under disability or "unable to manage properly his affairs by reason of illness or mental or physical disability . . .", but does not purport to create any other authority in Richard Thew after the death of Gerald Thew. Article Third of the Trust is only operative "upon the death of the grantor (Gerald Thew) and Richard Thew." Article Third describes distribution of the

8535-4\MMC

remainder to "Patricia Thew, Larry Thew, Melinda Thew Cooper and John Thew, in equal shares per stirpes and this Trust shall terminate."[1]

12. Article Seventh of the Gerald Thew Family Trust declares Gerald Thew and Richard Thew "or the survivor thereof" as Trustee, and appointed Larry Thew, Melinda Thew Cooper and John Thew as co-successor trustees.

13. Melinda Thew Cooper has never qualified as Trustee, and in fact has disclaimed any interest in exercising the powers of a Trustee. See Affirmation of William Bagliebter, Exhibit "11" hereto, paragraph 3.

14. Following the death of Gerald Thew, while Richard Thew was the Trustee under the Gerald Thew Family Trust, Richard Thew created, by Trust document dated May 17, 2002, the "R.W. Thew Irrevocable Living Trust", annexed hereto as Exhibit "4". Melinda Thew Cooper is not a beneficiary of the R.W. Thew Irrevocable Trust.

15. Simultaneously, by three Deeds dated May 17, 2002, Richard Thew, purporting to exercise authority as Trustee of the Gerald Thew Family Trust, conveyed, for no consideration, a total of approximately 124 acres. See Deeds annexed hereto as Exhibits "5", "6" and "7".

16. On May 29, 2002, Richard, again for no consideration, conveyed a parcel to Larry and Michelle Thew. See Exhibit "8".

17. On or about April 1, 2003 Richard Thew, again purporting to exercise authority as surviving Trustee under the Gerald Thew Family Trust, made an additional conveyance to the "R.W. Thew Trust" by Deed describing approximately 128 acres, again for no

---

[1] Although not relevant for determination of this motion, there is an ambiguity between the terms of the second "Whereas" clause and the first page of the Trust, which indicates Gerald Thew's intention to create a Trust for the benefit of himself, his son Richard Thew and three children of Richard and proceeds to name in that second "Whereas" clause, not only three children, but Richard Thew's then living spouse Patricia Thew. Reference to the phrase "per stirpes" in Article Third creates a possibility that the unnamed child of Richard and Patricia Thew, namely Kevin Thew, has an interest in the Trust assets by virtue of his surviving his late mother Patricia and inheriting her interest in the remainder of the Gerald Thew Family Trust accordingly. This is not an accounting proceeding, and because plaintiff does not believe that this Court has "jurisdiction" over the Trust itself or of the Trust assets, the determination of Kevin's interest if any in the Trust is not necessary for this Court to dispose of this motion or address this action.

8535-4\MMC

consideration. See Complaint, paragraphs 50 and 51; see copy of Deed annexed hereto as Exhibit "9".

18.  As the Complaint sets forth, said Deeds represent conveyances executed by Richard Thew, purporting to act on behalf of the Gerald Thew Family Trust in excess of the authority, if any, granted under the Trust following the death of Gerald Thew.

19.  Each of the Deeds discussed above diminished the Gerald Thew Family Trust.

20.  Turning to the transaction which Reed Smith claims creates no issue of fact with respect to its potential liability under any of the claims set forth in the Complaint, the documentary evidence establishes the following.

21.  Reed Smith LLP has asserted in its Statement of Undisputed Facts that it represented only the Gerald Thew Family Trust in the transaction involving the Curry Family Partnership and the "Orchard property". See Defendant Reed Smith LLP's Statement of Undisputed Facts, paragraph 1.

22.  In fact, the contract which Reed Smith forwarded to this office in the spring of 2004, a copy of which is annexed hereto as Exhibit "10", describes the seller as "R.W. Thew Trust", not the Gerald Thew Family Trust.

23.  The contract, Exhibit "10", includes property which had been previously conveyed by Richard Thew purporting to act on behalf of the Gerald Thew Family Trust to the R.W. Thew Irrevocable Living Trust.

24.  O'Hare & O'Hare, P.C., the firm which had prepared the Deeds by Richard Thew which sought to strip the Gerald Thew Family Trust of its principal assets (See Exhibits "5" through "9"), represented the purchaser Curry Family Partnership in the transaction involving the Thew Orchard, described in Exhibit "10".

25.  The Purchase and Sale Agreement was in fact prepared by Mr. Bagliebter at Reed Smith. Exhibit A-2 to Exhibit 10 carries at its footer the phrase "NYLID-0188608.01-WBAGLIB".

8535-4\MMC

26. Having prepared a contract for the R.W. Thew Irrevocable Living Trust, of which plaintiff is not a beneficiary, Reed Smith's statement that there is no question about who its client was (stating in its Statement of Undisputed Facts that "Reed Smith represented the Gerald Thew Family Trust") is difficult to understand. Clearly it set out to represent Richard Thew as trustee of a Trust created to disinherit plaintiff.

27. Nor should there be any suggestion that Reed Smith was unfamiliar with the Gerald Thew Estate, or the scope or extent of his interests or assets, including the Gerald Thew Family Trust. Mr. Bagliebter, who signed the affidavit before this Court had been, since prior to the Fall of 2003, the authorized representative of Richard W. Thew, as Executor of the Estate of Gerald R. Thew. Annexed hereto as Exhibit "11" please find a copy of an affirmation filed in Dutchess County Surrogate's Court by Mr. Bagliebter made on August 25, 2004. Exhibit "A" thereto includes a "Notice of Deficiency" issued October 31, 2003, which identifies Mr. Bagliebter as the authorized representative at page 3 of said Notice of Deficiency (Tab A).

28. Based upon the aforesaid, there is obviously a strong inference that can be drawn that Reed Smith LLP in fact had detailed knowledge about the assets of the Estate of Gerald Thew and conveyances made by him to the Gerald Thew Family Trust. See, e.g., Note at Schedule G, Item B-2 in Exhibit "11":

> Item B-2 (added): The $404,499.00 fair market alternate value of the assets in the Thew Family Trust UA dated 4/01/1994 is includable in the decedent's Estate under §2036 of the Internal Revenue Code. Accordingly, the taxable estate is increased by $404,499.00.

See Exhibit "11", Tab B.

29. As discovery has not been permitted, plaintiff relies upon the above, in addition to the allegations of the complaint to establish questions of fact about the extent of Reed Smith's knowledge of Richard Thew's efforts to disinherit his daughter, prior to the Orchard transaction described in the contract prepared by Reed Smith.

30. The transaction described in the contract, Exhibit "10", resulted in a title search being performed on behalf of the purchaser. A copy of that title search is annexed hereto.

8535-4\MMC

See North River Abstract Corp., cover letter dated December 9, 2003 and preliminary report annexed thereto. <u>Exhibit "12"</u>:

31. As can be seen from Schedule B to Exhibit 12, Items 23, 24, 25, 26 and 27, the title company had significant questions about the conveyances between the Gerald Thew Family Trust and the R.W. Thew Trust.

32. In response to those objections, Reed Smith first attempted to persuade the title company representative that title in the R.W. Thew Trust was marketable, but then prepared the "Trustee's Certificate" annexed hereto as <u>Exhibit "13"</u>. By that document, Larry Thew and John Thew as Trustees under the R.W. Thew Irrevocable Living Trust state (without setting forth the basis for their understanding of Richard Thew's intention) that the conveyance by Richard Thew of the Orchard parcels was a "mistake". Very simply, if the conveyance of the Orchard parcels was a "mistake", their father's conveyance of the other parcels was a "mistake" too. If the conveyances were not mistakes (as plaintiff believes) then Reed Smith sought to cover up Richard Thew's actual intent with the "Trustee's Certificate".

33. In order to supposedly remedy the "mistake" of Richard Thew, Larry and John Thew then executed a Deed conveying the property, which the Curry Family Partnership had contracted to buy, back to the Gerald Thew Family Trust. Then, in a Deed purportedly executed by Richard W. Thew as Trustee of the Thew Family Trust (although the acknowledgment annexed to said Deed purports to be an acknowledgment of the signature of Larry Thew) the property was conveyed to the Curry Family Partnership. See <u>Exhibit "14"</u> (Deed from the R.W. Thew Trust to Richard Thew as Trustee of the Thew Family Trust), and <u>Exhibit "15"</u>, being a copy of the Deed from Richard Thew as Trustee of the Thew Family Trust to the Curry Family Partnership.

34. An accounting of the transaction appears on a closing statement provided by Reed Smith, <u>Exhibit "16"</u> hereto.

35. Based upon the scant "discovery" by way of select documentary evidence

8535-4\MMC

voluntarily provided by Reed Smith prior to the institution of this suit, it would appear that the following entries on the closing statement represent improper disbursement of closing proceeds:

 a. Paragraph 2 represents a payment by the purchaser, credited against the purchase price and therefore not received by the seller representing "back and current real estate taxes". The Deeds annexed hereto (Exhibits "5" and "7") establish that the R.W. Thew Trust held title for the two years prior to the December 2003 closing, and it, rather than the Gerald Thew Family Trust, should pay the back taxes in question. The years represented by those taxes are set forth in the title search annexed hereto as Exhibit "12", as being 2002 State, County, Town Taxes, prior year's School taxes, and 2003 State, County Town and School Taxes.

 b. Paragraph 4 on page 2 of the closing statement refers to a $90,000 credit taken by the purchaser because the purchaser had to pay money to the North River Abstract Co. representing escrow for unpaid unemployment taxes. The title report discloses a notice of federal tax lien filed November 19, 2003 against Richard Thew in the amount of $43,432.84 for unpaid farm labor withholding taxes which, at least on its face, does not appear to be a proper disbursement for the Gerald Thew Family Trust.

 c. Paragraph 6, relating to a real estate commission paid to the purchaser's lawyer's father, (who notarized many of the Richard Thew Deeds out of the Gerald Thew Family Trust for no consideration) is at least on its face questionable.

 d. Items 8, 9 and 11 similarly represent credits taken by the purchaser, and thus monies not received by the Gerald Thew Family Trust totalling

8535-4\MMC

over $160,000 for payment of unknown loans allegedly made to "Thew Orchard".

36. Very simply, Reed Smith allowed those credits to the purchaser which resulted in monies not being received by its purported client, the Gerald Thew Family Trust. Those credits diminished the gross proceeds from the transaction.

37. Getting to the nub of Reed Smith's motion, Reed Smith's theory is that as long as it retained $900,000.00, being 1/3 of the gross contract price, it is irrelevant whether it also facilitated the payment of improper expenses by the trustees of the Gerald Thew Family Trust. Under Reed Smith's theory, it would not matter whether all of the proceeds in excess of $900,000.00 were paid directly to Richard Thew personally, to one of his trusts, or to Larry or John Thew. Their motion is based upon the notion that as long as they held $900,000.00 for plaintiff, their hands were clean and they had a license to represent the Trust in whatever manner they deemed appropriate, without being responsible to plaintiff.

38. The problem with Reed Smith's theory is that it overlooks the law and the facts.

39. The law is set forth in the accompanying Memorandum of Law, and establishes that plaintiff's right as a remainder beneficiary is not to 1/3 of any discrete asset, or to 1/3 of the proceeds from any discrete assets, but, rather, to 1/3 of the trust corpus.

40. Reed Smith will concede that the trust corpus on the date of Richard Thew's death should have included, at a minimum, the appropriate proceeds of the sale of the Thew Orchard.

41. It should also have included (and did not include) the other parcels conveyed by Richard Thew out of the Gerald Thew Family Trust for no consideration as described in the annexed Deeds. It should also include, but does not yet include, the land which was conveyed to the Curry Family Partnership, but which the Curry Family Partnership was obligated to reconvey to the Gerald Thew Family Trust after the closing. (Complaint, paragraphs 92-100). More than one year later, it has not been so reconveyed.

8535-4\MMC

42. At this early stage in the litigation, where plaintiff has been denied the opportunity to conduct discovery, plaintiff cannot state precisely how dramatically those conveyances have decreased the corpus of the Trust that should be available for distribution now upon Richard's death. As an example, paragraphs 46 and 47 of the complaint set forth a no-consideration transfer from the Gerald Thew Family Trust to the R.W. Thew Trust on May 17, 2002. On December 26, 2002, the R.W. Thew Trust sold what is, upon information and belief, part of the property thus conveyed to one Raymond Patierno for $60,000.00. See Exhibit "17". If $60,000.00 was fair value, that is $60,000.00 that will not be available to plaintiff as part of the trust corpus.

43. Hypothetically, however, if those conveyances totalled a fair market value of, say, $600,000.00, such that the total adjusted corpus in round figures, at the date of Richard's death should have been $3.3 million, then plaintiff's claim of 1/3 would be $1.1 million, rather than $900,000.00.

44. Having participated in the breaches of fiduciary duty, actually made the disbursements out of its escrow account, and enabled the co-defendants John Thew and Larry Thew as well as the late Richard Thew to deplete the proceeds of the Curry Family Partnership transaction, Reed Smith LLP is liable for all damages that logically and reasonably flow from that tortious conduct. Were this Court to hold otherwise, it would eviscerate the long-standing precedent discussed in the accompanying Memorandum of Law.

45. Following the closing on or about December 19, 2003, the documentary evidence establishes that Reed Smith held total cash proceeds of $2,140,000.00. Prior to this litigation, Reed Smith provided this office with two pages from its escrow account reports, copies of which are annexed hereto as Exhibit "18". Those reports show disbursements from the escrow account prior to or on the date of Richard Thew's death (December 29, 2003) totalling $485,783.30. That total represents $185,783.30 paid to Reed Smith LLP, presumably for legal fees and disbursements, and a transfer of $300,000.00 to an

8535-4\MMC

unidentified "Thew account".

46. On December 31, 2003, <u>after Richard Thew's death</u>, $1,654,216.70 appears to have been transferred to a different account, apparently under the name of "Richard Thew". Thereafter, and over a period of three months, additional transfers from the Gerald Thew Family Trust assets are made by Reed Smith totalling $736,013.35.  See <u>Exhibit "18"</u>.

47. To the extent that any of that disbursed money is necessary to make plaintiff Melinda Thew Cooper whole in this or any other litigation, Reed Smith should be held accountable for its disbursements.  Reed Smith does not even suggest that it sought or received counsel from beneficiary Melinda Thew Cooper with respect to these disbursements, at a time when Reed Smith knew, or should have know, that the Trust created by Gerald Thew had "terminated" and its assets should be distributed to the three beneficiaries.

48. The documentary facts establish as a matter of law that Richard Thew willfully depleted the Gerald Thew Family Trust of assets.  Reed Smith learned that in the course of their representation of their clients.  Despite having that actual knowledge, Reed Smith apparently made the <u>assumption</u> that every prior disbursement or transaction accomplished by Richard Thew would survive scrutiny.  Reed Smith must be making that assumption, because only by making that assumption could they have concluded that holding on to 1/3 of the gross proceeds from this particular transaction was sufficient <u>as</u> <u>a</u> <u>matter</u> <u>of</u> <u>law</u>, to satisfy their duty to Melinda Thew Cooper, a beneficiary of their client.

49. The annexed documentary evidence proves as a matter of fact and law that Reed Smith's assumption was wrong: when the assets of the Gerald Thew Family Trust, are marshalled, the gifts made by Richard Thew, for no consideration (and whatever else Richard Thew did with non-real estate assets) will mean that $900,000.00 is not enough to make plaintiff whole.

50. Reed Smith did not, moreover, simply rely on the good faith of the trustees. Rather, it took control of the sale proceeds and (after paying itself $216,000 for a simple real

8535-4\MMC

estate transaction) parceled those proceeds out of the Trust, without any authority whatsoever, and without even inquiry of plaintiff.

51. At this early stage, prior to any discovery, the documentary evidence annexed hereto clearly is adequate to establish a question of fact as to Reed Smith's liability. The scope of plaintiff's damages will certainly exceed the sums on hand in their own account. Certainly, Reed Smith's submissions, in light of the documentary evidence annexed hereto, fail to eliminate all triable questions of fact.

## CONCLUSION

For the reasons set forth herein, plaintiff requests that the motion be denied.

DATED: Poughkeepsie, New York
February 1, 2005

Yours, etc.

McCABE & MACK LLP

By: _____
RICHARD R. DuVALL (RRD-8967)
Attorneys for Plaintiff
63 Washington Street
P.O. Box 509
Poughkeepsie, NY 12602-0509