DECLARATION OF TRUST

made as of May    , 2002

by

Richard W. Thew

Grantor

and

Larry Thew

and

John Thew

Trustees

Name Of Trust: R. W. Thew Irrevocable Living Trust

# TABLE OF CONTENTS

ARTICLE FIRST - Payments During Grantor's Life
ARTICLE SECOND - Successor Beneficiaries
ARTICLE THIRD - Minors or Incompetents
ARTICLE FOURTH - Life Insurance Policies
ARTICLE FIFTH - Irrevocability
ARTICLE SIXTH - Powers of Trustees
ARTICLE SEVENTH - Appointment of Trustees
ARTICLE EIGHTH - Trustees Decisions Conclusive
ARTICLE NINTH - Simultaneous Death
ARTICLE TENTH - Rights Not Assignable
ARTICLE ELEVENTH - Construction
ARTICLE TWELFTH - Binding Effect
ARTICLE THIRTEENTH - Short Name

## DECLARATION OF TRUST

**DECLARATION OF TRUST**, made as of this         day of May, 2002, among Richard W. Thew, having an address at 195 Thew Road, LaGrangeville, New York 12540, as grantor (hereinafter referred to as the "Grantor"), and Larry Thew, having an address at Thew Road, LaGrangeville, NY 12540, and John Thew, having an address at Thew Road, LaGrangeville, NY 12540, as trustees (collectively hereinafter referred to as the "Trustees").

### WITNESSETH:

**WHEREAS**, the Grantor's wife has predeceased the Grantor.

**WHEREAS**, the Grantor desires to create an irrevocable trust of the life insurance policies and other property described in Schedule A hereto, together with such monies, securities and other assets as the Trustees hereafter may hold or acquire hereunder (said life insurance policies and other property, monies, securities and other assets, together with any additions thereto received pursuant to the Grantor's last will and testament or as the proceeds of insurance on the Grantor's life, or otherwise, being hereinafter referred to as the "trust estate"), for the purposes and upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the covenants herein contained and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Grantor hereby irrevocably transfers, assigns and delivers to the Trustees as and for the trust estate the property more particularly described in Schedule A hereto, to hold the same, and any other property which the Trustees hereafter may acquire, **IN TRUST**, for the purposes and upon the terms and conditions hereinafter set forth:

### ARTICLE FIRST

#### Payments During Life of Grantor

The Trustees shall hold, manage, invest and reinvest the trust estate, shall collect the income therefrom, and shall pay the net income to or for the benefit of the Grantor, in convenient installments but at least quarter-annually, during the life of the Grantor. In addition, the Trustees, at any time and from time to time, in their absolute discretion, may pay to or for the benefit of the Grantor, for the health, education, maintenance or support of the Grantor, any part or all of the principal of the trust estate.

## ARTICLE SECOND

### Successor Beneficiaries

Upon the death of the Grantor, the Trustees shall pay the interest and income of the trust estate to the Trustees, Larry Thew and John Thew, in two equal shares, for their benefit and the benefit of their issue. The trust estate shall be paid and distributed to such persons and in such proportions to each said issue after attaining the age of 21 years of age and before the age of 30 years of age as the parent Trustee deems in the best interest of his issue.

## ARTICLE THIRD

### Distributions To Minors Or Incompetents

In any case in which the Trustees are authorized or directed by any provision of this Agreement to pay or distribute income or principal to any person who shall be a minor or incompetent, the Trustees, in their absolute discretion and without authorization of any court, may pay or distribute the whole or any part of such income or principal to such minor or incompetent personally, or may apply the whole or any part thereof directly to the health, education, maintenance or support of such minor or incompetent, or may pay or distribute the whole or any part thereof to the guardian, committee, conservator or other legal representative, wherever appointed, of such minor or incompetent or to the person with whom such minor or incompetent may from time to time reside, or in the case of a minor, may pay or distribute the whole or any part thereof to a custodian for such minor under any gifts to minors or transfers to minors act. Evidence of such payment or distribution or the receipt therefor by the person to whom any such payment or distribution is made shall be a full discharge of the Trustees from all liability with respect thereto, even though the Trustees may be such person.

The Trustees, in their absolute discretion, may defer payment or distribution of any or all income or principal to which a minor may be entitled until such minor shall attain the age of twenty-one (21) years, or to make such payment or distribution at any time and from time to time, during the minority of such minor, holding the whole or the undistributed portion thereof as a separate fund vested in such minor but subject to the power in trust hereby given to the Trustees to administer and invest such fund and to use the income or principal thereof for the benefit of such minor as if such fund were held in trust hereunder. No bond or other security and no periodic accounts shall be required with respect to such fund, and the same shall be subject to commission as if it were a separate trust fund. The Trustees shall pay and distribute any balance of such fund to such minor when such minor shall attain the age of twenty-one (21) years. Except as is herein above provided, if such minor shall die before attaining the age of twenty-one (21) years, the Trustees shall pay and distribute such balance to the executors, administrators or legal representatives of the estate of such minor.

2

The word "minor", wherever used in this Article THIRD, shall mean any person who has not attained the age of twenty-one (21) years.

## ARTICLE FOURTH

### Life Insurance Policies

With respect to any insurance policies payable to the Trustees, the Trustees, upon being advised that any sum is so payable by reason of the death of the Grantor, shall endeavor to collect the same, and may bring a suit or action therefor, or may compromise, adjust, settle or submit to arbitration any claims therefor. The Trustees shall be entitled to reimbursement from the trust estate for expenses incurred by the Trustees in collecting or attempting to collect any such sum by suit, action or otherwise. The Trustees, however, shall be under no duty to bring a suit or action unless the expenses of the Trustees, including attorneys' fees, shall have been advanced or guaranteed to the satisfaction of the Trustees. The Trustees may repay, out of the trust estate, any advances made by the Trustees or reimburse the Trustees for expenses incurred in collecting or attempting to collect any sum as aforesaid.

The Trustees in no case shall be under any duty or obligation to make any claim against the Grantor's estate, or take any action against the executors, administrators or legal representatives of the Grantor's estate, for reimbursement for any reduction of the sums payable upon the death of the Grantor by reason of unpaid premiums or for any other cause, including any loans and interest thereto secured by any insurance policies.

During the life of the Grantor, the Trustees may, in their discretion, apply the net income or principal of the trust estate to the payment of premiums on any life insurance policy of which the Trustees or any trust hereunder is beneficiary. If the net income and principal is insufficient to pay such premiums, the Trustees may notify the Grantor and the beneficiaries of the trust of such insufficiency and give them the opportunity to furnish the necessary funds. If neither the Grantor nor any of the beneficiaries furnishes the funds necessary to pay the premiums, the Trustees may, but shall not be obligated to, obtain the funds required to pay such premiums by selling a portion of the principal of the trust estate, by borrowing on the security of such principal, by borrowing against the cash surrender value of the policy or by surrendering some policies and using the proceeds to pay the premiums on other policies. The Trustees also is authorized to convert such policies to paid-up or extended term insurance if the trust estate does not have the necessary funds to pay the premiums. If no funds are available for the payment of the premiums of any insurance policy, the Trustees may assign ownership of such policy to the then living issue of the Grantor.

The Trustees is vested with all right, title and interest in and to said insurance policies, and is authorized to exercise all of the options, benefits, rights and privileges thereunder, including those which may arise during the Grantor's life or relate to non-payment of premiums.

3

corporation, and rights to subscribe to securities or rights other than cash declared or issued by a corporation, shall be dealt with as principal. The proceeds from the sale, redemption or other disposition, whether at a profit or loss, and regardless of the tax treatment thereof, of any property constituting principal, shall normally be dealt with as principal, but the Trustees may allocate a portion of any such proceeds to income if the property disposed of produced no income or substantially less than the current rate of return on trust investments, or if the Trustees shall deem such action advisable for any other reason. The Trustees may (but are not directed to) allocate receipts and disbursements between income and principal in accordance with the New York Estates, Powers and Trusts Law, as amended and in effect from time to time. The preceding provisions of this paragraph shall not be deemed to authorize any act by the Trustees which may be a violation of any law prohibiting the accumulation of income.

No person who deals with any Trustee hereunder shall be bound to see to the application of any asset delivered to such Trustee or to inquire into the authority for, or propriety of, any action taken or not taken by such Trustee. This Agreement, however, shall not be construed to permit any person to deal with the trust estate for less than adequate consideration, to borrow without adequate interest or adequate security, to exercise any power of administration in a nonfiduciary capacity, or otherwise to act in such manner as to cause the Grantor to be treated as the owner of the trust estate or any part thereof.

No Trustee shall be liable for acts or omissions in administering the trust estate or any trust created by this Agreement, except for that Trustee's own actual fraud, gross negligence or willful misconduct. If any Trustee becomes liable as Trustee to any other person who is not a beneficiary in connection with any matter not within the Trustee's control and not due to the Trustee's actual fraud, gross negligence or willful misconduct, such Trustee shall be fully indemnified and held harmless by the trust estate and any trust created hereunder giving rise to such liability, as the case may be, against and in respect of any damages that such Trustee may sustain, including without limitation attorneys' fees.

The Trustees are authorized, but not required, to accept any property transferred to the Trustees by any person during such person's lifetime or by such person's last will and testament. Any property so transferred to, and accepted by, the Trustees shall become a part of such trust or trusts created by this Agreement as such person shall direct and may be commingled with the other property in the trust or trusts to which such property has been added and shall be held, administered and disposed of as a part of such trust or trusts.

### ARTICLE SEVENTH

### Appointment of Trustees

The Grantor hereby appoints Larry Thew and John Thew as joint Trustees hereunder.

7

If either of the Trustees for any reason shall fail or cease to act as Trustee, the other Trustee, at any time after qualifying to act as Trustee, shall have the right to serve as sole Trustee hereunder, without appointment of a successor co-Trustee.

Either Trustee, at any time and from time to time, by instrument in writing signed and acknowledged, may delegate any or all of the rights, powers, duties, authority and privileges, whether or not discretionary, provided herein, to any other Trustee for such period or periods of time as may be designated in such written instrument; provided, however, that any such instrument shall be revocable at any time. Where a signature is required in order to exercise any powers conferred on the Trustees hereunder or by applicable law, the signature of any one Trustee may be relied upon by any third party as sufficient and binding.

The Trustees shall have the right to resign at any time by giving written notice to the then income beneficiaries of each trust created hereby, or if none of the income beneficiaries of a trust are sui juris, to the persons sui juris who would be entitled to a share of the principal of such trust if it were then to terminate. If upon such resignation no Trustee remains in office, such resignation shall not be effective until the Grantor, or if the Grantor is unable to do so, a court of competent jurisdiction, has appointed a successor Trustee. The expenses of the accounting of a resigning Trustee shall be a proper charge against such trust.

The Grantor shall never serve as trustee hereunder.

The term "Trustees" wherever used herein shall mean the trustee or trustees in office from time to time. Any such trustee shall have the same rights, powers, duties, authority and privileges, whether or not discretionary, as if originally appointed hereunder.

No bond, surety or other security shall be required of any Trustee acting hereunder for the faithful performance of the duties of Trustee, notwithstanding any law of any State or other jurisdiction to the contrary.

## ARTICLE EIGHTH

### Decisions of Trustees Are Conclusive

The determination of the Trustees in respect of the amount of any discretionary payment of income or principal from any trust established hereunder, and of the advisability thereof, shall be final and conclusive on all persons, whether or not then in being, having or claiming any interest in such trust, and upon making any such payment, the Trustees shall be released fully from all further liability or accountability therefor.

8

The right of any beneficiary to any payment of income or principal shall in every case be subject to any charge or deduction which the Trustees may make against the same under the authority granted to the Trustees by any law or by this Agreement.

## ARTICLE NINTH

### Simultaneous Death

If any beneficiary under this Agreement shall die simultaneously with any other person upon whose death such beneficiary shall become entitled to receive either income or principal under this Agreement, or in such circumstances as to render it difficult or impracticable to determine who predeceased the other, then for purposes of this Agreement such beneficiary shall be deemed to have predeceased such other person. The provisions of this Agreement shall be construed as aforesaid, notwithstanding the provisions of any applicable law establishing a different presumption of order of death or providing for survivorship for a fixed period as a condition of inheritance of property.

## ARTICLE TENTH

### Rights of Beneficiaries Are Not Assignable

No disposition, charge or encumbrance on the income or principal of any trust established hereunder shall be valid or binding upon the Trustees. No beneficiary shall have any right, power or authority to assign, transfer, encumber or otherwise dispose of such income or principal or any part thereof until the same shall be paid to such beneficiary by the Trustees. No income or principal shall be subject in any manner to any claim of any creditor of any beneficiary or liable to attachment, execution or other process of law prior to its actual receipt by the beneficiary.

## ARTICLE ELEVENTH

### Construction

The validity and construction of this Agreement and the trusts created hereunder shall be governed by the laws of the State of New York.

Any provision herein which refers to a statute, rule, regulation or other specific legal reference which is no longer in effect at the time said provision is to be applied shall be deemed to refer to the successor, replacement or amendment to such statute, rule, regulation or other reference, if any, and shall be interpreted in such a manner so as to carry out the original intent of said provision.

9

Wherever used in this Agreement and the context so requires, the masculine shall include the feminine and the singular shall include the plural, and vice versa.

The captions in this Agreement are for convenience of reference, and they shall not be considered when construing this Agreement.

If under any of the provisions of this Agreement any portion of the trust estate would be held in trust beyond a date twenty-one years after the death of the last survivor of the Grantor and the issue of the Grantor and other beneficiaries hereunder now in being, or such later date permitted by the rule against perpetuities applicable in the State of New York; then, upon such date, the trust of such portion shall terminate and the principal, and any unpaid income thereof, shall be paid and distributed to the person or persons then living who would have been entitled to receive the income therefrom had the trust continued, in the proportions to which they would have been so entitled.

### ARTICLE TWELFTH

#### Binding Effect

This Agreement shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the undersigned Grantor and upon the Trustees acting hereunder.

### ARTICLE THIRTEENTH

#### Short Name

This Agreement and the trusts created hereunder may be referred to, in any other instrument, by the name: "Richard W. Thew Irrevocable Living Trust". Any transfers to this Agreement or any trust hereunder may refer to the aforesaid name or to "Larry Thew and John Thew as Trustees under R. W. Thew Irrevocable Living Trust", with or without specifying any change in Trustees.

IN WITNESS WHEREOF, this Agreement has been duly executed as of the date

10

first above written.

_____
Richard W. Thew
Grantor

_____
Larry Thew
Trustee

_____
John Thew
Trustee

11

STATE OF NEW YORK, COUNTY OF                    , ss.

On the 1st day of May, 2002, before me, the undersigned notary public, personally appeared Richard W. Thew, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*William J O'Hare*
Notary Public
My commission expires on 6/15/2004

WILLIAM J. O'HARE
Notary Public, State of New York
No. 02OH5012970
Qualified in Dutchess County
Commission Expires June 15, 2022

STATE OF NEW YORK, COUNTY OF                    , ss.

On the 1st day of May, 2002, before me, the undersigned notary public, personally appeared Larry Thew, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in    capacity, and that by    signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*William J O'Hare*
Notary Public
My commission expires on 6/15/2003

WILLIAM J. O'HARE
Notary Public, State of New York
No. 02OH5012970
Qualified in Dutchess County
Commission Expires June 15, 2022

12

STATE OF NEW YORK, COUNTY OF           , ss.

On the 17th day of May, 2002, before me, the undersigned notary public, personally appeared John Thew, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in   capacity, and that by   signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*William J O'Hare* (signature)
Notary Public
My commission expires on 6/15/2002

WILLIAM J. O'HARE
Notary Public, State of New York
No. 02OH5012970
Qualified in Dutchess County
Commission Expires June 15, 2003

13

## SCHEDULE A

### TRUST ESTATE PROPERTY

Real Estate: See attached descriptions. Including but not limited to all parcels on Beaver Road, Town of Lagrange, Dutchess County, New York held in the name of Melinda Thew Cooper a/k/a Melinda Cooper, Melinda Thew

Life Insurance: Metropolitan Life Insurance Policy Number 941 250 316A

— Mortgage dated April 1, 1994 recorded in the Dutchess County Clerk's office in Book 2286 at page 12.0 in the amount of $200,000.00

14

DESCRIPTION #1
SCHEDULE A

ALL that piece or parcel of land in the TOWN OF LAGRANGE, Dutchess County, New York, bounded and described as follows:

BEGINNING at the hickory tree marking the northwest corner of the previously described 16.71 acre parcel; thence north 84° east 10 feet to a stake at the southerly apex of the 3.62 acre triangle of land being sold to Ernest Emans; thence along the same north 24° east along a line of marked trees in the woods, 666 feet to a stake at intersection of fences marking a common corner of Ernest Emans's open field; thence southwest corner of Gerald Thews wood land and northwest corner of the herein described parcel; thence along a wire fence through the woods and a stonewall fence south of woods, south 78° east 496 feet to a stake in an angle of woods, marking the northeast corner of the herein described parcel; thence along a stonerow and wire fence bounding land of Gerald Thew; three courses as follows: South 13 1/2° west 339.2 feet; south 13° west 353.2 feet and south 14 1/2° west 55 feet to a fence post marking the southeast corner of the herein described parcel; thence along a wire fence and the 16.71 acre parcel north 69° west 658 feet to the place of beginning. CONTAINING 9.33 acres of land, more or less.

ALSO all that piece or parcel of land in the Towns of LaGrange and Beekman, bounded and described as follows:

Beginning at the northeast corner of the 7.42 acre parcel, being the southeast corner of the herein described parcel, at the center of the highway; thence along the center line thereof, six courses as follows: north 43° west 61 feet; north 61° west 100 feet; north 25° west 200 feet; north 50° west 200 feet; north 55° west 250 feet and north 45° west 254 feet to a point 12 feet southerly of a hickory tree standing at the north side of the highway and about 3 feet easterly of the west boundary of this parcel, said point marking the southeast corner of a parcel of 4.60 acres being sold to Ernest Emand, and marking the southwest corner of the herein described parcel; thence along the 4.60 acre parcel north 28° east partly through the field 317 feet and 399 feet further along a wire fence, a total distance of 716 feet to a hickory tree marking the northwest corner of the herein described parcel; thence along a wire fence to the south of a 9.33 acre lot south 69° east 658 feet to an intersection of this course with the wire fence bounding land of Gerald Thew on the west said intersection marking the northeast corner of the herein described parcel; thence along Gerald Thew's west boundary three courses, as follows: south 14 1/2° west 214.8 feet; south 14° west 206 feet and south 13 1/2° west 700 feet more or less to place of beginning. and CONTAINING 16.71 acres more or less.

DESCRIPTION #1 CONTINUED
SCHEDULE A CONTINUED

ALSO all that piece or parcel of land in the TOWNS OF LAGRANGE AND BEEKMAN, bounded and described as follows:

BEGINNING at a point 10 feet north of the southeast corner of the 1.90 acre parcel, above described and 5 feet west of a telephone pole said point situated at the northwest corner of the herein described parcel; thence along the N.Y. Telephone Co.'s pole line south 64° east 1440 feet to a point in the highway marking the north east corner of the fence bounding land of Petrie, north 68° west 1412 feet to a stake at the north end of the easterly stonewall fence of the Hill road where it starts to bend west being a southeast corner of John Eastman's 2.20 acre lot and the southwest corner of the herein described parcel; thence along the east boundary of Eastman's lot north 12° east 401 feet to the place of beginning.  CONTAINING 12.66 acres of land, more or less.

ALSO a right of way as now laid out from the highway leading to Hilton's as reserved in a deed to John Eastman from said highway to the 12.66 acre parcel above described.

ALSO all that piece or parcel of land situate in the Towns of LaGrange and Beekman, bounded and described as follows:

BEGINNING at the northwest corner of the 12.66 acre parcel which is the south west corner of the herein described parcel; thence along the 1.90 acre parcel, south 12° west 350 feet to a point in the center of the highway called the Guinea Bridge Road; thence along the center thereof 10 courses as follows:  south 71° east 150 feet; south 69° east 127 feet; south 67° east 229 feet; south 45° east 100 feet; south 45° east 254 feet; south 55° east 250 feet; south 50° east 115 feet; south 25° east 200 feet; south 61° east 100 feet and south 43° east 61 feet to a point in the center of the highway where it intersects Gerald Thew's west boundary; thence south 15° west 8 feet to a point marking the northeast corner of the 12.66 acre parcel being the southeast corner of the herein described parcel; thence along the N.Y. Telephone Co's pole line north 64° west 1440 feet to the place of Beginning, and Containing 7.42 acres of land more or less.

Grid # 02-6559-00-664428-00
Grid # 08-6559-04-630480-00
Grid # 08-6559-02-700600-00

DESCRIPTION #2
SCHEDULE A CONTINUED

ALL that certain piece or farm of land situate in the Town of Beekman, County of Dutchess and State of New York, particularly described as follows:

BEGINNING at a stone set in the ground in the lot line against land formerly of Samuel B. Ackerman now of Fred E. Ackerman and thence running in company with said Ackerman line south 77°-45' east 25 chains 40 links to a stake set in said lot line; thence again in company with his line south 4°-15' west 2 chains 23 links to an angle of the fence; thence in company with Melvin J. Ingraham's (formerly Mastin Kelley's) line south 57° east 1 chain 22 links to an angle of the fence; thence in company to said Ingraham's (formerly Kelley's) line south 72°-45' east 3 chains 39 links to an angle of the fence; thence in company with his (Ingraham's) line north 84°15' east 3 chains 66 links to an angle in the stone wall; thence in company with his (Ingraham's) line, north 53° east 2 chains 78 links to the lot line on the north side of the brook; thence in company with Ingraham's (formerly Kelley's) line south 83°-45' east 2 chains 80 links to an angle in said Ingraham's (formerly Kelley's) line; thence in company lands of Earnest Emans (formerly Samuel Green) north 4°-30' west 38 chains 16 links the with his (Ingraham's) line and the northeast corner of Francis Eman's (formerly Albert Eman) farm; thence in company with said Eman's line north 73°-15' east 37 chains 98 links to the northeast corner of the lands formerly of Jonathan Dorland; thence in company with the line of the said Jonathan Dorland's farm south 6°-30' west 7 chains 43 links to a line of land formerly owned by Daniel S. Congdon; thence in company with the line of the said Congdon land south 82°-30' east 7 chains 51 links to the northeast corner of said Congdon's lands; thence in company with said Congdon's lands south 7°-30' west 10 chains 52 links to an angle of the fence; thence in company with said Congdon's lands south 12°-30' west 4 chains 8 links to an angle of the fence; thence in company with his line south 7° west 3 chains 12 links to an angle of the fence; thence again in company with the line of the lands of the aforesaid Congdon south 7°-30' west 10 chains 66 links to the north side of the road running through the premises herein described; thence south 8°-30' west 4 chains 96 links to the place of beginning. Containing 137 acres 2 roods 25 perches of surface be the same more or less.

Grid # 02-6559-00-781474-99
Grid # 02-6559-00-781474-00
Grid # 02-6559-00-018292-00

DESCRIPTION #3
SCHEDULE A CONTINUED

ALL that lot or parcel of land situate in the Town of Beekman, Dutchess County, New York, containing 8-1/2 acres more or less, and being the premises conveyed to the said Jerry Masters and Edna Masters by Francis W. Emans and Thelma W. Emans, his wife, by deed dated April 10, 1964, and recorded in the Dutchess County Clerk's Office on April 10, 1964, in Liber 1123 of Deeds, page 289.

Grid # 02-6559-00-988522-00

DESCRIPTION #4
SCHEDULE A CONTINUED

ALL that piece or parcel of land situate in the Town of Beekman, County of Dutchess and State of New York, bounded and described as follows:

BEGINNING at a fence post set in the junction of two stone walls, said fence post marking the southwest corner of the lands sold to Alfonso Amandola in November, 1944, and now owned by Joseph De Vito and Frank Alexander, said fence post also being the northwest corner of the parcel of land herein described; thence along a stone wall marking the southerly boundary of said De Vito and Alexander property South 72°-41' East 387.3 feet to a stake set in a stone wall, said point marking the southeast corner of the lands of Devito and Alexander and the southwest corner of other lands of Gennaro Antedomenico; thence along the lands of Antedomenico, South 72°-47' East 334.3 feet to an iron pipe marking the northeast corner of the parcel herein described; thence along other lands of Antedomenico and following a stone wall South 11°-53' West 469.0 feet and South 10°-05' West 319.6 feet to point marking the southeast corner of the parcel of land herein described; thence along the lands of Gerald Thew, South 83°-39' West 610.3 feet to a junction of stone walls marking the southwest corner of the parcel herein described; thence along the lands of Gerald Thew and following a stone wall North 3°-51' East 738.4 feet and North 5°-42' East 185.6 feet to the place of beginning. Being 13 Acres of land more or less.

ALSO ALL that right of way from Clapp Hill Road to the premises above mentioned, and more particularly described as follows:

BEGINNING at a point in the westerly boundary of a town road known as Clapp Hill Road, said point being the southeast corner of a garage now standing on the Antedomenico Farm; thence South 29° West 750 feet more or less to a point; thence North 82° West 382 feet more or less to a point in the stone wall, the last mentioned point being 69.2 feet from an iron pin marking the northeast corner of the parcel of land described above; thence southerly along the last mentioned stone wall 20 feet more or less to a point; thence South 82° East 398 feet more or less to a point; thence North 29° East 750 feet more or less to a point in the westerly boundary of said Clapp Hill Road; thence northerly along the westerly boundary of said Clapp Hill Road 20 feet more or less to the place of beginning.

Grid # 02-6659-00-7340500

DESCRIPTION #5
SCHEDULE A CONTINUED

ALL that lot of woodland lying and being in the Town of Beekman, beginning at a walnut sapling marked standing in Philip Spencer's line, and being a corner of Jesse C. Roger's land, and running as described in a deed from Elisha Baldwin to Albert Monfort, dated May 1, 1843, in company with said Rogers line, "north 25° west 3 chains and 33 links to a white oak tree marked; thence north 38°-15' east 6 chains and 57 links to a locust sprout; thence south 88°-15' east 14 chains, 43 links, to a stake and stones on James H. Denton's line, being a corner of the aforesaid Spencer's land; thence in company with said Spencer's line, south 65°-30' west 18 chains and 85 links to the BEGINNING, containing 6 acres, 3 roods and 35 parches of land.

Grid # 02-6559-00-993170-00

11

DESCRIPTION #6
SCHEDULE A CONTINUED

ALL that tract or parcel of land situate in the Town of LaGrange, County of Dutchess and State of New York, bounded and described as follow:

PARCEL "A"

BEGINNING at the northeast corner, a point marked by a stone wall corner in the division line of the lands of Emans Hills Realty Corporation on the west and Thew on the east bearing south 10°-20'-50" West 493.86 feet and South 24°-09'20" West 662.47 feet along said division line from a stone wall corner marking the northwest corner of the lands of Thew, and continuing from thence South 30°-01'-20" West 305.81 feet along said division line to an iron pipe marking the southeast corner of the herein described parcel; thence North 59°-07'-40" West 183.78 feet to a pipe, thence North 45°-12'-40" West 177.41 feet to a point, thence South 84°-26'-20" West 108.30 feet and South 89°-25'-00" West 118.59 feet along the northerly line of the lands of Roeder to a steel pin set marking the southwest corner of the herein described parcel, thence North 7°-01'-50" West 310.72 feet to a steel pin set in the southerly line of Pulling Road, thence northeasterly on a curve concave to the northwest of radius 192.38 feet an arc distance of 189.82 feet and North 22°-17'-30" East 38.26 feet along the southeasterly line of said road to a steel pin marking the most northerly corner of the herein described parcel, thence South 60°-24'-00" East 618.84 feet to the point or place of beginning.

PARCEL "B"

BEGINNING at the southeast corner, a point in the center line of Clapp Hill Road, said point also marking the southwest corner of a 1.9 acre parcel conveyed by Emans to T. Rowa by deed recorded in the Dutchess County Clerk's Office, and continuing from thence North 67° West 190 feet more or less along the center of the herein Clapp Hill Road to a point marking the southwest corner of the herein described parcel, thence North 21° East 462 feet along the easterly line of the lands of Roeder to a point marking the northwest corner of the herein described parcel, said point also being in the southerly line of Parcel "A" described above, thence South 45°-12'-46" East 177.41 feet to an iron pipe marking the northeast corner of the herein described parcel, said pipe also marking the northwest corner of the lands of T. Rowa, thence southerly 504.57 feet along the westerly line of the lands of Rowa to the point or place of beginning.

Grid # 08-6359-02-602517-00