**PURCHASE AND SALE AGREEMENT**

**BY AND BETWEEN**

**R.W. THEW TRUST**

**[U/T/D _____]**

as Seller

**AND**

**ORA J. CURRY**

as Buyer

Premises:  [Thew Orchard]
LaGrangeville, New York

Dated as of:  October  __, 2003

#188608 v2
10/23/2003 3:23 PM

## REAL ESTATE PURCHASE AND SALE CONTRACT

THIS REAL ESTATE PURCHASE AND SALE CONTRACT (this "Agreement") is made and entered into as of October ____, 2003, by and between R.W. THEW TRUST, [U/T/D/ _____, _____], having a mailing address of c/o Richard W. Thew, Trustee, Clapp Hill Road, LaGrangeville, New York 12540 ("Seller"), and Ora J. Curry c/o Torrington Honda, Midgeon Road, Torrington, Connecticut.



## W I T N E S S E T H:

WHEREAS, Seller is the owner of a certain Premises (as defined below) located in Town of LaGrange and ~~Town of East Fishkill~~, County of Dutchess, State of New York and Buyer is willing to purchase such Premises from Seller upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Definitions. In addition to other words and terms defined elsewhere in this Agreement, as used herein the following words and terms shall have the following meanings unless the context hereof otherwise clearly requires:

"Closing" shall mean the consummation of the purchase and sale of the Premises in accordance with the terms of this Agreement.

"Deposit" shall mean Deposit as defined in Section 3(a) below.

"Escrow Agent" shall mean Reed Smith LLP.

"Excluded Premises" shall mean the approximately 5.324 acre parcel of land containing the Gerald Thew family residence and other improvements thereon, as more particularly identified on Exhibit A-2 hereto.

"Land" shall mean that certain parcel of land described in "Exhibit A-1" hereto, less and except the Excluded Premises as described on Exhibit A-2.

"Outside Date" shall mean the Outside Date as defined in Section 5(c) below.

"Premises" shall mean (a) the Land, together with all of the tenements, hereditaments and appurtenances belonging or in any way appertaining to such real property, and all of Seller's right, title and interest in and to (i) any and all property lying in the bed of any street, road or avenue, open or proposed, in front of or adjoining such real property to the center line thereof, (ii) any strips and gores of land adjacent to, abutting or used in connection with such real property, (iii) any easements and rights, if any, inuring to the benefit of such real property or to Seller in connection therewith and (b) any improvements or betterments thereon; but specifically excluding from the definition hereof, the Excluded Premises.

"Title Company" shall mean, having an address at [_____].

2.  Purchase and Sale of Premises.  Subject to the terms, provisions and conditions set forth herein, Seller hereby agrees to sell the Premises to Buyer, and Buyer hereby agrees to purchase the Premises from Seller.

3.  Purchase Price for Premises. The Purchase Price for the Premises shall be Two Million Seven Hundred Thousand and 00/100 ($2,700,000.00) Dollars, payable in the following manner:

(a)  Deposits. On the date hereof, Buyer shall deposit with Seller the sum of $300,000.00 (the "Deposit").  The Deposit shall be made payable and delivered to Seller by certified check or wire transfer of immediately available funds (and shall be held by Seller in its own account).  Except as expressly provided in Section 5(c) below, the Deposit shall be non-refundable. At Closing, the Deposit and shall be credited against the Purchase Price.

*[handwritten: 200,000. –]*

(b)  Balance of Purchase Price.  The balance of the Purchase Price shall be paid in full by Buyer at the Closing by certified check or wire transfer of immediately available federal funds, as Seller shall direct.

(c) Accrued Interest.  Any interest earned on the Deposit shall be deemed a part thereof and shall be retained by Seller if Closing occurs or shall be given to the party entitled to the Deposit if Closing does not occur hereunder; provided that any interest earned on the Deposit shall not be credited to Buyer at Closing.

4.  Closing.

(a)  The Closing shall take place at the office of Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022, on a date (the "Closing Date") mutually acceptable to Buyer and Seller, but in no event later than November 15, 2003. *[handwritten: on or about December 15, 2003.]*

(b)  Settlement-Seller.  At the Closing, Seller shall deliver to Buyer:

(i)  A duly executed bargain and sale deed with covenants against grantor's acts with respect to the Premises in form and substance reasonably satisfactory to the parties, subject to no exceptions other than the Permitted Exceptions (the "Deed");

(ii)  A duly executed FIRPTA Certificate pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended;

(iii)  Authorization documents of Seller in form reasonably satisfactory to Buyer and the Title Company;

(iv)  Duly completed and executed form TP-584 and RP-5217 with respect to real estate transfer taxes payable in connection with the transfer of the Premises; and

(v)  Such other documents as are reasonably required to complete the transaction contemplated herein.

(c)  Settlement-Buyer.  At the Closing, Buyer shall deliver to Seller:

(i)  The balance of the Purchase Price in accordance with Section 3(b) and any prorations and credits provided for herein;

-2-

       (ii)    Authorization documents of Buyer in form reasonably satisfactory to Seller and the Title Company;

       (iii)    Duly completed and executed form TP-584 and RP-5217 with respect to real estate transfer taxes payable in connection with the transfer of the Premises; and

       (iv)    Such other documents as are reasonably required to complete the transaction contemplated herein.

     5.    <u>Title and Condition of Premises; Due Diligence Review; Indemnification of Seller</u>

    (a)  <u>State of Title</u>. Buyer shall take title to the Premises subject only to the Permitted Exceptions. "Permitted Exceptions" shall mean:

       (i)    all local, state and federal laws, ordinances or governmental regulations, including but not limited, building and zoning laws, ordinances, regulations and restrictions, now or hereafter in effect relating to the Premises, and any violations thereof (whether or not of record, but subject to Seller's cure obligations set forth in the last sentence of Section 5(c) below);

       (iii)    all consents by Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut;

       (iv)    any unpaid installments of taxes and/or assessments not due and payable on or before the Closing Date subject to adjustment, as provided for herein;

       (v)    the rights of utility companies to erect, maintain and operate lines, wires, poles, cables and distribution boxes, in, over, under and upon the Premises;

       (vi)    all covenants, restrictions, easements, reservations and other agreements of record, if any (provided same do not render title unmarketable);

       (vii)    any state of facts, circumstances or conditions upon or effecting the Premises caused or permitted by Buyer, and.

       (viii)    any state of facts that an accurate survey would disclose (so long as same do not render title to the Premises, as a whole, unmarketable; but provided further, it is agreed by the parties hereto that the existence of any wetlands, flood plain or areas not suitable for residential development at the Premises as would be disclosed on such survey shall not render title unmarketable).

    (b)  <u>Condition of Premises</u>. Buyer acknowledges and agrees that Buyer shall accept the Premises in its "<u>AS IS, WHERE IS CONDITION, WITH ALL FAULTS.</u>" Buyer hereby acknowledges that it shall not be entitled to, and does not and will not, rely on Seller or its agents as to (i) the quality, nature, adequacy or physical condition of the Premises; (ii) the quality, nature, adequacy or physical condition of soils or the existence of ground water at the Premises, (iii) the existence, quality, nature, adequacy or physical condition of any utilities serving the Premises; (iv) the development potential of the Premises for any particular purpose; (v) the zoning or other legal status of the Premises; (vi) the Premises or its operations' compliance with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions or restrictions of any governmental or quasi-governmental entity or of any other person or entity; (vii) the quality of any

NYLIB-#188608 v2 - Purchase and Sale Agreement - R.W. Thew Trust.doc-

October 23, 2003  3:23 PM

labor or material relating in any way to the Premises; (viii) the nature, status and extent of any right, encumbrance, license, reservations, covenant, condition, restriction or any other matter affecting title to the Premises, or (ix) the existence or nature of any environmental condition(s) at the property involving any and all hazardous or toxic materials, substances, pollutants, contaminants or waste currently defined as a "hazardous waste", "hazardous substance", "toxic substance" or any word of similar import under any Environmental Laws, including, without limitation, oil, petroleum, or any petroleum derived substance or waste, asbestos or asbestos-containing materials, PCBs, explosives, radioactive materials, dioxins, or urea formaldehyde insulation.  As used herein, "Environmental Laws" shall include, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. § 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq., the Clean Air Act, 42 U.S.C. § 7401, et seq., the Clean Water Act, 33 U.S.C. § 1251, et seq., the Toxic Substance Control Act, 15 U.S.C. § 2601, et seq., and the Occupational Safety and Health Act, 29 U.S.C. § 651, et seq., as any of the preceding have been amended prior to the date hereof, and any other federal, state, or local law, ordinance, regulation, rule, order, decision or permit relating to the protection of the environment or of human health from environmental effects of Hazardous Substances and which are applicable to any of the Premises.

**BUYER ACKNOWLEDGES THAT BUYER HAS RELIED AND WILL BE RELYING ON ITS OWN DUE DILIGENCE REVIEW IN PURCHASING THE PREMISES, INCLUDING PHYSICAL INSPECTIONS OF THE PREMISES, AND THAT THE SAME IS BEING PURCHASED SOLELY IN RELIANCE UPON SUCH DUE DILIGENCE REVIEW, AND FURTHER ACKNOWLEDGES THAT NO REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PURPOSE, HAVE BEEN MADE OR WILL BE MADE BY OR ON BEHALF OF SELLER WITH RESPECT TO THE PREMISES OR THE PHYSICAL CONDITION THEREOF.**  Without limiting the generality of the foregoing, in the event of any defect or deficiency in the Premises, whether latent or patent, Seller shall not have any responsibility or liability with respect thereto, nor any liability for incidental or consequential damages.  Upon Closing, subject to the terms of this Agreement, Buyer shall be deemed to have waived, released and discharged any claims it has, might have or may have against Seller, Seller's officer, employees or agents, any affiliate of Seller or any of Seller's lenders having a lien on the Premises, with respect to the condition of the Premises, either patent or latent, its ability or inability to obtain or maintain building permits, temporary or final certificates of occupancy or other licenses for the use or operation of the Premises, and/or certificates of compliance for the Premises, the actual or potential income or profits to be derived from the Premises, the real estate taxes or assessment now or hereafter payable thereon, the Premises' compliance with the federal Americans with Disabilities Act ("ADA") or any state or local accessibility standards, or with any environmental protection, pollution, subdivision or land use laws, rules, regulations or requirements, and any other state of facts which may exist with respect to the Premises.

(c) Due Diligence.  Promptly after the execution and delivery of this Agreement, Seller shall deliver to Buyer any prior title reports, surveys and/or environmental reports or tests with respect to the Premises then in its possession, provided same are not more than five (5) years old and, provided further that, any failure on the part of Seller to deliver such title reports, surveys or environmental reports or tests to Buyer (i) shall not constitute a default hereunder by Seller, nor (ii) operate in any way to extend the Inspection Period.  Buyer (and its representatives and agents), at Buyer's sole cost and expense and at reasonable times during normal business hours, shall have the right to enter upon the Premises during the Inspection Period for the purpose of inspecting and examining the Premises, performing environmental tests and sampling, or making soil, drainage or similar tests; provided that, Buyer acknowledges that Buyer shall not have the right to conduct any boring, drilling or other invasive tests or procedures on or about the Premises without the prior written consent of Seller, which consent shall not be unreasonably

-4-

withheld or delayed, but which consent may be subject to conditions imposed by Seller in its reasonable discretion, including without limitation (i) the prompt restoration, at Buyer's sole cost and expense, of the Premises to its condition prior to any such inspections or tests, and (ii) that Buyer provide Seller with evidence of insurance which Seller deems adequate in its sole discretion. Promptly after the date hereof, Buyer shall obtain, at its sole cost and expense, and review a current preliminary title report (the "Title Commitment") on the Premises prepared by Title Company, a survey of the Premises prepared by a licensed surveyor (the "Survey") and shall perform such other searches and due diligence investigation of the Premises as Buyer shall deem necessary or appropriate and shall advise Seller in writing of any exceptions to title (other than any Permitted Exceptions) appearing in the Title Commitment or the Survey which Buyer finds unacceptable (the "Title Notice").  Seller may, but shall not be obligated to, attempt to cure any objections to title, provided, however, that in the event Seller is unwilling or unable to cure same, then Seller shall notify Buyer in writing within ten (10) days following Buyer's receipt of the Title Notice.  In the event Seller notifies Buyer that Seller is unable or unwilling to cure any such objections, Buyer shall within five (5) business days following Seller's notice either (i) terminate this Agreement by written notice to Seller, whereupon the Initial Deposit shall be returned to Buyer and neither party shall have any further obligations hereunder (except for any indemnity obligations of either party pursuant to the other provisions of this Agreement), or (ii) waive any such objections and the transaction contemplated hereby shall be consummated as provided herein without any reduction in the Purchase Price.  In the event Buyer fails to elect either clause (i) or (ii) within such five (5) business day period, Buyer shall be deemed to have elected clause (ii).  Notwithstanding anything to the contrary contained herein, Buyer's right to terminate this Agreement pursuant to this Section 5(c) shall expressly terminate at 5:00 p.m. (local time at the Premises) on ~~November 7, 2003~~, time _December 15, 2003_ ~~not~~ being of the essence (the "Outside Date"), whereupon among other things, Buyer's approval of the Title Commitment, Survey and other searches or due diligence shall become absolute and the parties shall proceed to Closing in accordance with this Agreement.  Notwithstanding the foregoing, Seller shall be obligated to cure any objections to title that are (i) money judgments, mortgages or other recorded evidences of indebtedness voluntarily created or incurred by Seller, (ii) violations curable solely by the payment of money and which would remain the liability or obligation of Buyer (or the actual titleholder) after the completion of the contemplated construction at the Premises, and (iii) any other lien or encumbrance curable solely by the payment of money in an amount not to exceed $50,000; provided, however, that Seller may cure the foregoing objections by bond, escrow or otherwise, provided that the Title Company shall insure Buyer, without additional premium paid by Buyer, against any right of enforcement or collection against or out of the Premises.

(d) In the event that Buyer elects to (or is deemed to have elected to) proceed to close the transaction then the parties shall proceed to Closing in accordance with the Agreement.  If Buyer fails to close as required hereunder then Seller shall have the right to terminate this Agreement effective immediately upon written notice to Buyer, in which event Seller shall be entitled to retain the Deposit and thereafter neither party shall have any further obligation under this Agreement (except for the indemnity obligations of either party hereunder pursuant to any other provision of this Agreement).

(e) Seller's Indemnity.  Buyer shall promptly and at Buyer's expense restore the Premises and repair any damage resulting from Buyer's entry on to the Premises to the condition the Premises were in prior to such entry.  Buyer hereby indemnifies, defends and holds harmless Seller from and against any and all loss, cost, damage, claim and liability which Seller may sustain from Buyer's entry upon the Premises.  Buyer's obligations set forth in this Section 5(e) shall survive the Closing or earlier termination of this Agreement.

6.    No Financing Contingency.  It is expressly understood and agreed that the obligation of Buyer to purchase the Premises is not contingent upon Buyer's ability obtain a

NYLIB-#188608 v2 - Purchase and Sale Agreement - R.W. Thew Trust.doc-

October 23, 2003  3:23 PM

mortgage or other financing in order to obtain the Purchase Price or otherwise close this transaction; it is understood, however, that Buyer's obligation to purchase the premises is subject to his receipt.

7.    Prorations and Allocation of Expenses.

(a)    Prorations. The following items shall be prorated as of midnight preceding the date of Closing:  (i)  real estate taxes or assessments, and (ii) water and sewer and other utility charges, if any.  Notwithstanding the foregoing, Seller shall not be responsible for any portion of any special assessments which may be a lien on the Premises but are not due and payable until after the Closing.  To Seller's actual knowledge, without inquiry, there are no special assessment pending against the Premises at this time.  Seller agrees to indemnify and hold Buyer harmless from and against any losses, costs, liability, damages and expenses (including, without limitation, reasonable attorney's and disbursements) which Buyer may sustain in connection with any failure of Seller to pay all real estate transfer taxes or similar transfer tax imposed by the State of New York in connection with this transaction.  Seller's obligations under this Section 7(a) shall survive the Closing.

(b)    Seller's Costs and Expenses. Seller shall pay the following costs and expenses:  (i) any real property transfer tax, payable by reason of the transfer of the Premises, and (ii) fees of Seller's counsel.

(c)    Buyer's Costs and Expenses. Buyer shall pay the following costs and expenses:  (i) the premium for ALTA Owner's Policy of title insurance and any endorsements to the title policy requested by Buyer, (ii) survey costs, (iii) the fees for recording the Deed, (iv) fees for any environmental inspection of the Premises, (v) fees of Buyer's counsel, and (vi) all other due diligence costs of Buyer.

(d)    Other Costs and Expenses. All costs and expenses incident to this transaction and the closing thereof not specifically described above shall be paid by the party incurring such costs.

8.    Remedies Upon Default.  In the event Buyer breaches or defaults under any of the terms of this Agreement prior to Closing, the sole and exclusive remedy of Seller shall be to retain the full amount of the Deposit as liquidated damages and Buyer shall have no right therein. Buyer and Seller acknowledge that the damages to Seller resulting from Buyer's breach would be difficult, if not impossible, to ascertain with any accuracy, and that the liquidated damage amount set forth in this Section represents both parties' efforts to approximate such potential damages. In the event Seller defaults under any of the terms of this Agreement at or prior to Closing or if Seller is unable to convey title to the Premises in the manner required under this Agreement, then Buyer, as its sole and exclusive remedies, shall be entitled either (i) to receive an immediate refund of the Earnest Money and terminate this Agreement, or (ii) sue for specific performance.

9.    Risk of Loss. The provisions of the Uniform Vendor and Purchaser Risk Act (N.Y. GOL § 5-1311) shall not be applicable hereto.  Risk of loss to the Premises or any part thereof from damage or destruction by casualty shall be transferred to Buyer as of the date hereof. If, between the date hereof and the Closing, any portion of the Premises shall be substantially damaged or destroyed by casualty Buyer shall nevertheless proceed with this Agreement and pay the full Purchase Price, without any right or claim to any insurance proceeds to which Seller may be entitled as a result of such damage, destruction, casualty or loss.

-6-

10.    <u>Representations of Seller</u>.  Seller represents and warrants that:

(a)    Seller is not now a party to any litigation affecting the Premises;

(b)    Except as may be disclosed on the Title Commitment, Seller has not entered into any covenants or restrictive agreements affecting the Premises nor has Seller entered into any lease or other occupancy agreement affecting the Premises.  Except as aforesaid, there are material respects as or the Closing Date. *Premises in subject to the*

(f) Seller is the sole owner of the Premises.

11.    <u>Miscellaneous Provisions</u>.

(a)    <u>Brokers</u>.  No brokers other than William O'Hare was involved in connection with the transaction contemplated herein.  Upon the Closing of the transaction contemplated herein, Seller shall pay to Broker's a commission pursuant to a separate agreement. Each party hereby indemnifies, defends and holds harmless the other party from and against any and all claims for any broker's commission or similar compensation which may be payable to any broker, finder or other person or entity (other than Broker) based solely upon such indemnifying party's own acts. The provisions of this Paragraph 11(a) shall survive the Closing.

(b)    <u>Arbitration</u>.  If a controversy arises with respect to the subject matter of this Agreement or the transaction contemplated herein (including without limitation the rights to any deposit paid pursuant to this Agreement), Buyer and Seller agree that such controversy shall be settled by final arbitration in accordance with the New York City Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator(s), each having at least ten (10) years experience in the purchase and sale of commercial real estate in the State of New York, may be entered in any court having jurisdiction hereof.

(c)    <u>Assignment; Binding Effect</u>.  This Agreement shall be binding upon and shall inure to the benefit of Seller and Buyer and their respective successors and assigns and, may not be assigned or transferred by either party without having first obtained the consent of the other party; provided that, Buyer shall have the right to (i) assign its interest in this Agreement to an

-7-

NYUB-#188608 v2 - Purchase and Sale Agreement - R.W. Thew Trust.doc-

October 23, 2003  3:23 PM



entity in which Buyer or one or more of the members of Buyer that own a majority of the equitable interests in Buyer retains such economic interest (an "affiliate") or (ii) designate any such affiliate to take title to the Premises at the Closing. Notwithstanding any such assignment, the assigning party shall remain jointly and severally liable hereunder for the obligations of such party, including, without limitation, any indemnity obligations.

(d)  <u>Representations of Buyer</u>.  Buyer has all of the necessary power and authority to consummate the transactions contemplated by this Agreement and has duly authorized the execution and delivery of this Agreement.  It shall be a condition precedent to Seller's obligation to close this transaction that all of Buyer's representations set forth herein shall be true and correct in all material respects as of the Closing Date.

(e)  <u>Captions</u>.  The several headings and captions of the Sections and subsections used herein are for convenience of reference only and shall in no way be deemed to limit, define or restrict the substantive provisions of this Agreement

(f)  <u>Entire Agreement; Recording</u>.  This Agreement constitutes the entire agreement of Buyer and Seller with respect to the purchase and sale of the Premises, and supersedes any prior or contemporaneous agreement with respect thereto.  No amendment or modification of this Agreement shall be binding upon the parties unless made in writing and signed by both Seller and Buyer.  This Agreement shall not be recorded by any party and, if recorded by any party, the other party hereto may immediately terminate all of its obligations under this Agreement, and the party which recorded this Agreement shall pay the other party's reasonable costs and attorneys' fees in removing this Agreement of record.

(g)  <u>Time of Essence</u>.  Time is NOT of the essence with respect to the performance of all of the terms, conditions and covenants of this Agreement set forth in Sections 4(a) and 5(c) hereof.

(h)  <u>Cooperation</u>.  Buyer and Seller shall cooperate fully with each other to carry out effectively the purchase and sale of the Premises in accordance herewith and the satisfaction and compliance with all of the conditions and requirements set forth herein, and shall execute such instruments and perform such acts as may be reasonably requested by either party hereto.

(i)  <u>Governing Law</u>.  This Agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws and customs of the State of New York.

(j)  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument.

(k)  <u>Notices</u>.  All notices under this Agreement shall be in writing and shall be deemed to have been properly given if sent by nationally recognized overnight courier or United States certified mail, postage prepaid, addressed to the party for whom intended at the address set forth above (as such address may be changed from time to time in writing).  All notices hereunder sent by overnight courier shall be deemed effective on the date received or refused.  Any notice required or permitted to be given under this Agreement may be given by the such party's respective counsel with the same force and effect as if given by such party.

-8-

(l)     Buyer and Seller agrees to complete, sign and deliver to the order (at the Closing) a designation agreement and all other information, documents and forms required by the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, Form 1099-S and its instructions, in connection with reporting this sale to the federal government.  Seller shall cause its attorney (or such other person who is acceptable to Buyer) to designate either as the "real estate broker" responsible for  reporting the sale under such code, regulations and form.

(m)     Excavation Contract.  Buyer acknowledges and agrees that as a material inducement to Seller to enter into this Agreement, Buyer has agreed that upon the development of the Premises by Buyer or any subsidiary, affiliate or joint venture in which Buyer or any such subsidiary or affiliate has a material economic interest, Seller shall be granted a right of first refusal to enter into an agreement with Buyer or an excavation company owned or controlled by the Thew family for the performance of excavation work at the Premises [in connection with the site improvements thereon]; provided that such company shall agree to perform such excavation services at competitive rates.  The provisions of this Section 11 (m) shall survive the Closing.

**Seller's Initials _____    Buyer's Initials _____**

12.     Escrow Provisions.  By its execution hereof, the Escrow Agent shall accept the escrow contemplated herein.  The Deposit shall be held by the Escrow Agent, in trust, on the terms hereinafter set forth.

(a)     The Escrow Agent, if directed by Seller to do so, shall deposit the Deposit in an interest-bearing deposit commercial bank account mutually acceptable to Seller and Buyer; shall not commingle the Deposit with any funds of the Escrow Agent or others; and shall promptly advise Seller and Buyer that the Deposit has been deposited, the bank name and account number.

(b)     The Escrow Agent shall deliver the Deposit to Seller or to Buyer, as the case may be, under the following conditions:

(i)     To Seller on the Closing Date, provided, Closing shall occur pursuant to the Agreement;

(ii)     To Seller upon receipt of written demand therefor ("Seller's Demand for Deposit") stating that Buyer has defaulted in the performance of Buyer's obligation to close under this Agreement and the facts and circumstances underlying such default; provided, however, that the Escrow Agent shall not honor such demand until more than five (5) days after the Escrow Agent shall have sent a copy of such demand to Buyer in accordance with the provisions of Section 12(c) of this Agreement nor thereafter, if the Escrow Agent shall have received a "Notice of Objection" (as hereinafter defined) from Buyer within such five (5) day period.

(iii)     To Buyer upon receipt of written demand therefor ("Buyer's Demand for Deposit") stating that Seller has defaulted in the performance of any of Seller's obligations under this Agreement and the facts and circumstances underlying this same; provided, however, that the Escrow Agent shall not honor such demand until more than five (5) days after the Escrow Agent shall have a copy of such demand to Seller in accordance with the provisions of the following Section 12(c) nor thereafter, if the Escrow Agent shall have received a Notice of Objection from Seller within such five (5) day period.

-9-

IN WITNESS WHEREOF, the parties hereto have executed this Purchase and Sale Agreement on the date first above written.

*Contract is subject to receipt + review of environmental study prepared for seller*

**SELLER:**

**R.W. THEW FAMILY TRUST,**

By: _Richard W. Thew_
Name:   Richard W. Thew

Title:     Trustee

**BUYER:**

~~ORRI J.~~ CURRY *FAMILY* ~~TRUST~~ *PARTNERSHIP*

*by: Orri Curry, General Partner*

**Escrow Agent, solely as to the provisions of Section 12:**

By:_____

Name:_____

Title:_____

Date:_____

-11-

(c)     Within two (2) business days of the receipt by the Escrow Agent of a Seller's Demand for Deposit or a Buyer's Demand for Deposit the Escrow Agent shall sell a copy thereof to the other party by certified or registered mail, return receipt requested or overnight courier service with a signature required for delivery and otherwise as provided in Section 11(k) of this Agreement.  The other party shall have the right to object to the delivery of the Earnest Money by sending written notice the 'Notice of Objection") of such objection to the Escrow Agent by certified or registered mail, return receipt requested or overnight courier service with a signature for delivery and otherwise as provided in Section 11(k) of this Agreement, which Notice of Objection shall be deemed null and void and ineffective if such Notice of Objection is not received by the Escrow Agent within the time periods prescribed in the foregoing Section 12(b) of this Agreement. Such notice shall set forth the basis for objecting to the delivery of the Earnest Money.  Upon receipt of a Notice of Objection, the Escrow Agent shall promptly send a copy thereof to the party who sent the written demand.

(d)     In the event the Escrow Agent shall have received the Notice of Objection with the time periods prescribed in the foregoing Section 12(b) of this Agreement, the Escrow Agent shall continue to hold the Escrow Money until (i) the Escrow Agent receives written notice from Seller and Buyer directing the disbursements of the Deposit, in which case the Escrow Agent shall then disburse the Deposit in accordance with such joint direction, or (ii) in the event of litigation between Seller and Buyer, the Escrow Agent shall deliver the Deposit to the clerk of the court in which said litigation is pending, or (iii) the Escrow Agent takes such affirmative steps as the Escrow Agent may, at the Escrow Agent's option, elect in order to terminate the Escrow Agent's duties including, but not limited to, depositing the Earnest Money in the district court for New York County, New York, and bringing an action for interpleader, the costs thereof to be borne by whichever of Seller or Buyer is the losing party.

(e)     The duties of the Escrow Agent are only as herein specifically provided, and Escrow Agent shall incur no liability whatever except for willful misconduct or gross negligence as long as the Escrow Agent has acted in good faith.  The Seller and Buyer each release the Escrow Agent from any act done or omitted to be done by the Escrow Agent in good faith in he performance of its duties hereunder.

(f)     Upon making delivery of the Deposit in the manner herein provided, the Escrow Agent shall have no further liability hereunder.

(g)     The Escrow Agent shall either execute this Agreement or indicate in writing that it has accepted the role of Escrow Agent pursuant to this Agreement which in either case will confirm that the Escrow agent is holding and will hold the Earnest Money in escrow, pursuant to the provisions of this Agreement.

-10-

EXHIBIT A-1

Legal Description of Premises

Approximately 123.21 acre parcel located north of Clapp Hill Road, in the Town of Beekman and the Town of LaGrange, Dutchess County, State of New York, ~~but specifically less and except (i)~~ the approximately 34.79 acre parcel south of Clapp Hill Road ~~and (ii) the Excluded Premises.~~ IS NOT INCLUDED IN THE SALE
This CONTRACT is SUBJECT to PURCHASER'S RECEIPT + REVIEW Of
Meets and bounds description to follow.

THE PREMISES DESCRIBED AT EXHIBIT A-2 ARE EXCLUDED

EXHIBIT A-2

Excluded Premises

Approximately 5.324 acre parcel located north of Clapp Hill Road, in the Town of Beekman, Dutchess County, State of New York, ~~as more particularly identified on the attached survey.~~

CONTRACT is SUBJECT TO PURCHASERS RECEIPT REVIEW AND APPROVAL OF DIMENSIONS