8535-4\MMC

UNITED STATES DISTRICT COURT
SUPREME COURT OF THE STATE OF NEW YORK
------------------------------------------------------------------------x
MELINDA THEW COOPER,

                             Plaintiff,

   -against-

LARRY THEW; JOHN THEW; LARRY THEW, as Executor of     04 CV 8928
the Estate of Richard Thew; JOHN THEW, as Executor of the
Estate of Richard Thew; LARRY THEW, as successor co-     Assigned Judge: Hon.
trustee of the Gerald Thew Family Trust; JOHN THEW, as     Colleen McMahon, USDJ
successor co-trustee of the Gerald Thew Family Trust; LARRY
THEW as co-trustee of the R.W. Thew Trust a/k/a the R.W.
Thew Irrevocable Living Trust; JOHN THEW, as co-trustee of
the R.W. Thew Trust a/k/a the R.W. Thew Irrevocable Living
Trust; THE CURRY FAMILY PARTNERSHIP; TACONIC 82,
INC.; LARRY THEW, as an officer and/or director of TACONIC
82, INC.; JOHN THEW, as an officer and/or director of
TACONIC 82, INC.; REED SMITH, LLP; STEPHEN P.
O'HARE, ESQ.; WILLIAM J. O'HARE, ESQ.; O'HARE &
O'HARE, P.C.; MICHELE THEW; and PATRICIA CARSON,

                             Defendants.
------------------------------------------------------------------------x

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO DISMISS BY DEFENDANTS THEW**
_____

                             McCABE & MACK, LLP
                             Attorneys for Plaintiff
                             63 Washington Street
                             P.O. Box 509
                             Poughkeepsie, NY 12602-0509
                             (914) 486-6800

8535-4\MMC

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT I        THIS COURT HAS SUBJECT MATTER
                      JURISDICTION OVER THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . 1

           A.    Complete Diversity Exists Among the Parties . . . . . . . . . . . . . . . . . . 1

           B.    The Probate Exception to Diversity Jurisdiction Does
                Not Apply to This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    POINT II       THIS COURT SHOULD NOT ABSTAIN FROM
                      EXERCISING JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           A.    The <u>Princess Lida</u> Doctrine Does Not Apply . . . . . . . . . . . . . . . . . . . 5

           B.    <u>Colorado River</u> Doctrine Does Not Apply . . . . . . . . . . . . . . . . . . . . . 7

    POINT III      PLAINTIFF HAS STANDING TO BRING THIS ACTION . . . . . . . . . . . 8

    POINT IV      PLAINTIFF MAY BRING SUIT IN HER INDIVIDUAL
                      CAPACITY AS A MINORITY SHAREHOLDER . . . . . . . . . . . . . . . . . 9

    POINT V       DEFENDANTS' REMAINING ARGUMENT ARE
                      MERITLESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           A.    Plaintiff's Claims for Fraudulent Conveyances Must
                Stand Because Plaintiff is a Creditor . . . . . . . . . . . . . . . . . . . . . . . . . 10

           B.    Failure to Verify Allegations of the Complaint May
                Be Remedied and Does Not Mandate Dismissal . . . . . . . . . . . . . . . 12

           C.    Plaintiff Has Stated Valid Claims for Aiding and Abetting
                Breach of Fiduciary Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           D.    Plaintiff Has Stated a Legally Cognizable Claim for
                Conspiracy to Defraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

           E.    Plaintiff Has Stated a Valid Claim for Unjust Enrichment . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8535-4\MMC

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in opposition to the motion by defendants Larry Thew, John Thew, Taconic 82, Inc. and Michelle Thew seeking dismissal of the complaint.

## ARGUMENT

## POINT I

## THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

**A.  Complete Diversity Exists Among the Parties**

Defendants' attempt to defeat diversity jurisdiction based on a single count brought derivatively against the officers and directors of Taconic 82, Inc. falls flat. There is no dispute that plaintiff is a citizen of Kentucky, and that no defendants are citizens of Kentucky. Thus, diversity jurisdiction exists unless the "real collision" of issues dictates that Taconic 82 must be realigned as a plaintiff. The weight of the case law is squarely against realignment in cases such as this one.

While the cause of action in a derivative suit technically belongs to the corporation, the corporation is properly aligned as a defendant if the corporation is antagonistic to the lawsuit or to the shareholder bringing the lawsuit. Smith v. Sperling, 354 U.S. 91, 95-98 (1957). Diversity jurisdiction exists where "the 'actual controversy' is between citizens of different States. This is a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute." Id. at 97 (internal citations omitted).

Where the nature of the lawsuit reveals that the "corporation has become through its managers hostile and antagonistic to the enforcement of the claim," the corporation will remain aligned as a defendant. Smith, 354 U.S. at 97. Accord Koster v. (American) Lumbermans Mutual Casualty Co., 330 U.S. 518, 523 (1947); Doctor v. Harrington, 196 U.S. 579, 587-88 (1905); Rogers v. Valentine, 426 F.2d 1361 (2nd Cir. 1970) (upholding as "clearly correct" the district court's refusal to realign corporation as plaintiff in derivative suit, where

8535-4\MMC

management was antagonistic to the suit); Stoner v. Walsh, 772 F.Supp. 790, 792-93 (S.D.N.Y. 1991). "If the management of the corporation is actively aligned against the plaintiff shareholder and [her] lawsuit, then the shareholder and the corporation are actually on opposing sides of the controversy, and the corporation is properly named as a defendant." Liddy v. Urbanek, 707 F.2d 1222, 1224 (11th Cir. 1983).

Courts will routinely find such antagonism to exist where, as here, the case "charge[s] fraud by a dominant director and stockholder to his advantage and to the detriment of the minority stockholders." Smith, 354 U.S. at 97; Doctor, 196 U.S. at 587; Z.B. Holdings, Inc. v. White, 144 F.R.D. 42, 46 (S.D.N.Y. 1992) ("Ample authority holds that if the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism exists, and the corporation should be aligned as a defendant."); Chamarac Properties, Inc. v. Pike, 1993 U.S. Dist. LEXIS 14593, at *17 (S.D.N.Y. 1993) (treating corporation in derivative action as defendant for purposes of assessing diversity jurisdiction where the controlling individuals were alleged to have participated in the fraud at issue in the lawsuit); Liddy, 707 F.2d at 1224. The requisite antagonism will also be found where those who are alleged to have caused the harm would have to consent to any action to redress the harm. See Sonn v. Korein, 1988 U.S. Dist. LEXIS 4426 (S.D.N.Y. 1988).

The allegations relevant to Taconic 82 allege that John and Larry Thew, as officers and/or directors of Taconic 82, fraudulently conveyed certain parcels of real estate to the R.W. Thew Trust for no consideration. The parcels that were transferred comprised a significant percentage of the assets of the corporation. John and Larry Thew stood to substantially benefit from the fraudulent transfers, as the conveyance was made to a trust in which they are the sole beneficiaries. The fraudulent conveyances were part of a larger scheme to divert assets in which plaintiff had an interest. It would be difficult to conjure a better example of a case involving "fraud by a dominant director and stockholder to his

8535-4\MMC

advantage and to the detriment of the minority stockholders." Smith, 354 U.S. at 96, n.3. Moreover, as controlling shareholders, John and Larry Thew have been managing the corporation. Both are individual defendants in this lawsuit with numerous causes of action alleged against them. In an instance such as this one, "where the management . . . is definitely and distinctly opposed to the institution of this litigation, . . . the corporation [is] properly made a defendant" for purposes of determining diversity jurisdiction. Swanson v. Traer, 354 U.S. 114, 116 (1957).

The antagonisms between the controlling shareholders and the plaintiff here are clearly evident, and are precisely the sort that mandate the corporation's alignment as a defendant in this action. Thus, diversity jurisdiction properly exists.

**B.  The Probate Exception to Diversity Jurisdiction Does Not Apply to This Action**

Defendants' contention that the "probate exception" precludes subject matter jurisdiction over this action is completely without merit. Quite simply, the probate exception does not apply to actions involving trusts. Weingarten v. Warren, 753 F.Supp. 491, 494 (S.D.N.Y. 1990); Barnes v. Brandrup, 506 F.Supp. 396, 399 (S.D.N.Y. 1981); Schonland v. Schonland, 1997 U.S. Dist. LEXIS 17718, at *7 (D. Conn. 1997). In Barnes, for example, much like in this action, the plaintiff was a trust beneficiary suing the successor trustee for breach of fiduciary duty and trust mismanagement. Barnes, 506 F.Supp. at 397-98. The Court denied the defendant's motion to dismiss for lack of subject matter jurisdiction, noting that the "historical limitation on the exercise of diversity jurisdiction is therefore inapplicable [to] [c]ontroversies concerning trusts." Id. at 399.

Even if it were somehow applicable to actions concerning trusts, the exception precludes federal jurisdiction over an action only if it would interfere with the in rem administration of an estate. Markham v. Allen, 326 U.S. 490, 494 (1946); Lamberg v. Callahan, 455 F.2d 1213, 1216 (2nd Cir. 1972). The exception is limited in scope:

> federal courts of equity have jurisdiction to entertain suits 'in

8535-4\MMC

> favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

Lamberg, 455 F.2d at 1216 (quoting Markham, 325 U.S. at 494).  The instant action would not interfere with any estate.  Defendant's memorandum relies heavily on an action currently pending which relates to the administration of Gerald Thew's estate, and repeatedly refers to the fact that the assets of that estate are under the jurisdiction and control of the Surrogate Court.  This is meaningless to this action.  The Gerald Thew Family Trust is not an asset of Gerald Thew's estate.  Even if it were, that would not prevent this Court's jurisdiction over plaintiff's claims, which seek redress for torts committed and which do not seek or require the administration of the estate or the distribution of assets from the estate.  See, e.g., Weingarten, 753 F. Supp. at 494 (holding that this Court had jurisdiction over claims against an estate's executor for breach of fiduciary duty and unlawful conversion of assets, even though the Bahamas Supreme Court had prior exclusive jurisdiction over the res of the estate).

     The cases upon which Defendants place great weight are easily distinguishable and are irrelevant to this action.  For example, in Ganoe v. Lummis, the plaintiffs, who claimed to be seventh generation relatives of billionaire Howard Hughes, sued the administrator of Hughes' estate, challenging the final judgment of the Texas Probate Court regarding the proper intestate distributees, claiming the judgment to be the result of an illegal conspiracy by the administrator and the Probate Court.  Ganoe, 662 F.Supp. 718, 720-21 (S.D.N.Y. 1987).  This Court held that jurisdiction over certain claims – those seeking to vacate the judgment of the Probate Court, an accounting of the estate, and an order requiring the estate to pay plaintiffs two billion dollars – were barred by the probate exception.  See id. at 721.  This holding has no bearing on this case, as plaintiff here does not seek any relief which would involve accounting of an estate or distribution of the assets of an estate.  Moreover, the

8535-4\MMC

Ganoe court went on to recognize that the standard for determining the applicability of the probate exception is "whether under state law the dispute would be cognizable *only* by the probate court." Id at 722 (emphasis added) (quoting Lamberg, 455 F.2d at 1216). As such, the Ganoe court held that other claims asserted by plaintiffs – those seeking a ruling that plaintiffs were entitled to a portion of the estate – were not barred by the probate exception. Clearly, the claims alleged by plaintiff here – based on allegations of fraudulent conveyances and breaches of fiduciary duties – are not within the exclusive jurisdiction of the probate court, and could have been brought in a state court of general jurisdiction. Thus, the probate exception does not prevent federal jurisdiction. See Lamberg, 455 F.2d at 1216 (in suit alleging claims "enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed").

**POINT II**

**THIS COURT SHOULD NOT ABSTAIN FROM EXERCISING JURISDICTION**

A.   **The Princess Lida Doctrine Does Not Apply**

The Thew defendants urge this Court to hold that Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285, 1939 US Lexis 935 (1939) applies to this case. It does not.

Princess Lida and cases decided thereafter applying the "doctrine" formulated by the Supreme Court in Princess Lida first consider whether, in fact, *in rem* or *quasi in rem* jurisdiction is being exercised by a state court and whether *in rem* or *quasi in rem* jurisdiction is sought to be asserted in a later Federal action. As the Court posed the question:

> This case presents the question of whether the exercise of jurisdiction by a State court over the administration of a trust deprives a Federal court of jurisdiction of a later suit involving the same subject matter.

Princess Lida, 305 U.S. 456, 457.

Here, the Thew defendants claim that the Surrogate's Court in Dutchess County has in fact exercised some sort of jurisdiction over the matters set forth in plaintiff's complaint.

8535-4\MMC

The only document they point to is annexed to the Beller Affidavit at Exhibit "C". As the Thew defendants' Memorandum concedes, and as the Exhibit plainly shows, the Surrogate's Court has only exercised jurisdiction over the estate of Gerald Thew. There is no evidence that the Surrogate's Court has exercised any jurisdiction over the trust or the assets in the trust created under the Declaration dated April 1, 1994. Nor is there any suggestion that the Surrogate's Court of Dutchess County has exercised jurisdiction over the administration of that Trust over the last ten years.

Nor is jurisdiction in this Court either *in rem* or *quasi in rem*. In pertinent part, plaintiff's complaint asks this Court to set aside certain conveyances of real property which were made out of the Gerald Thew Family Trust. The assets in question are therefore not, by definition, "part of the trust". They are at this point in time held in the names of other entities besides the Gerald Thew Family Trust. That is precisely the problem.

As this Court held in Reliance Group Holdings, Inc. Securities Litigation, 2004 U.S. Dist. Lexis 7666 (2004) it is clear in this Circuit that Princess Lida sets forth a prudential rule of comity, rather than a jurisdictional rule. See, Carvel v. Thomas & Agnes Carvel Foundation, 188 F.3d 83, 86 (2d Circuit, 1999).

In Princess Lida, the Supreme Court stated that the doctrine which it was announcing "has no application to a case in a Federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a State court." Princess Lida at Thurn and Taxis, supra, 305 U.S. 466, Fn. 18; see, Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920, 1936 U.S. Lexis 948 (1936).

This Court considered the application of the Princess Lida doctrine in Von Bulow v. Von Bulow, 634 F.Supp 1284, 1986 U.S. Dist. Lexis 25904 (S.D.N.Y. 1986). There the Court stated as follows:

> Defendant's reliance on Princess Lida is misplaced. In that case, the
> Supreme Court made it clear that the principle allowing a Court first assuming

8535-4\MMC

> jurisdiction over property to maintain and exercise that jurisdiction to the exclusion of another Court is an exception to the general rule that a State and Federal Court may simultaneously adjudicate the same issues. . . . The longstanding rule that a Federal Court may adjudicate a right to a fund in the exclusive custody of a State Court was articulated in Markham v. Allen, 326 U.S. 490, 90 L.Ed. 256, 66 S.Ct. 296 (1946) . . .

Von Bulow v. Von Bulow, 634 F.Supp. 1284 at 1296.

As stated above, no lower Court has exercised any jurisdiction over the fraudulently conveyed properties. This case does not present facts sufficient to support this Court's abstention under the doctrine announced in Princess Lida of Thurn and Taxis, supra.

**B.    Colorado River Doctrine Does Not Apply**

The Thew Defendants next ask this Court to abstain pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 1976 U.S. Lexis 22 (1976).

Plaintiff has no dispute with the Thew defendants regarding the test established in the Colorado River, supra. Our objection with their proposal that this Court must abstain is over the lack of facts supporting their request. As discussed above, there is no evidence that the Dutchess County Surrogate's Court or any state court has assumed jurisdiction over any property.

The Thew defendants do not suggest that litigating this action in Federal court is inconvenient. Counsel for the Thew defendants are in New York City as are counsel for Reed Smith, LLP.

As to "piece meal litigation", again, the Thew defendants have not put forth any evidence that the issues raised in the complaint, and the allegations made by plaintiff against the Thew defendants and the other parties have been raised in any other forum. There is no suggestion that inconsistent verdicts or judgments are a potential.

There is no other action pending between these parties for the same or similar relief. As the Supreme Court stated in the Colorado River Water Conservation District, supra: "No one factor is necessarily determinative; a carefully considered judgment taking into account

8535-4\MMC

both the obligation to exercise jurisdiction and a combination of factors counseling against that exercise is required. See, Landis v. North American Co., [299 U.S. 248, 254-55; 57 S.Ct. 163, 81 L.Ed. 153 (1936)]. Only the clearest of justifications will warrant dismissal." Colorado River Water Conservation Dist., supra, 424 U.S. 800, 818-819

For all of the above reasons, this Court should refrain from abstaining. Rather, this Court should exercise its jurisdiction to its fullest extent permissible.

## POINT III

## PLAINTIFF HAS STANDING TO BRING THIS ACTION

Plaintiff has standing to sue in her individual capacity as a beneficiary of the Gerald Thew Family Trust. It is axiomatic that a trustee owes a fiduciary duty to the beneficiaries of the trust. A trustee must act in good faith in the administration of a trust, and this requirement means that he must act honestly and with the finest and undivided loyalty to the trust, not merely with that "standard of honor required of persons dealing at arms length in the workaday world," but with "the punctilio of an honor the most sensitive." Meinhard v. Salmon, 249 N.Y. 458 (1928); In Re Estate of Van Deusen, 37 A.D.2d 131 (3rd Dep't 1971). Where, as here, that duty has been breached by the trustee, the beneficiary has a claim against the trustee. See, e.g., Barnes v. Brandrup, 506 F.Supp. 396, 399 (S.D.N.Y. 1981).

Defendants' contention that plaintiff's claims are derivative and not direct is specious. Defendants rely on a maxim of law, inapplicable to the facts present here, that a beneficiary of a trust may not bring a claim *against a third person* unless the trustee proves unwilling or unable to bring the claim himself. See, e.g., Gebbie Foundation v. Rogerson, 62 Misc.2d 944 (1970). For example, in Modjeska v. Greer, upon which Defendants rely, the grantor established a trust for shares of stock he owned in a corporation. 233 A.D.2d 589, 589 (3rd Dep't 1996). The grantor was trustee, with his wife successor trustee. His son and grandchildren were the designated beneficiaries. Id. Due to some family disagreement, however, he delivered the stock to his son's wife rather than to his son. Id. The grantor later

8535-4\MMC

died, and then the son's wife sold the assets of the corporation, rendering the stock worthless. Id. The grantor's son and grandchildren, as intended beneficiaries, sued the wife. The Court held that, as beneficiaries, they could not bring the action, as the trust was the owner of the shares and thus owned the cause of action. Id.

Here, unlike in Gebbie Foundation and Modjeska, it is not a claim against a third person for a wrong against the trust that the beneficiary attempts to bring, but rather a claim against the trustee (and his estate's representative) for violations of his duties of good faith and loyalty.

Defendants make much of the fact that plaintiff is a successor co-trustee of the Gerald Thew Family Trust. The Complaint alleges that the trust document named Larry, John, and Melinda Thew as successor co-trustees. However, Melinda relinquished her position as successor co-trustee, leaving only defendants Larry and John Thew as successor trustees. See DuVall Affidavit, Exhibit "10".

## POINT IV

### PLAINTIFF MAY BRING SUIT IN HER INDIVIDUAL CAPACITY AS A MINORITY SHAREHOLDER

Count V alleges that John and Larry Thew, as majority shareholders of Taconic 82, Inc., breached their fiduciary duty to plaintiff, as a minority shareholder. Defendants' contend that this claim is derivative and that plaintiff may not bring the claim in her individual capacity.

There is no question that the majority shareholders in a closely held corporation owe a duty of utmost care and loyalty to the minority shareholders. Ingle v. Glamore Motor Sales, Inc., 73 N.Y.2d 183, 535 N.E.2d 1311, 538 N.Y.S.2d 771, 1989 NY Lexis 258 (1989). It is true that claims for breach of such duty will generally belong to the corporation if the claim seeks recovery of corporate assets and profits diverted from plaintiff. However, an exception to that general rule exists where, as here, there exists a "special relationship between the suing shareholder and the defendant, creating a special duty." Vincel v. White Motor Corp., 521 F.2d 113, 1118 (2nd Cir. 1975). Such a special relationship

8535-4\MMC

exists here, where all of the shareholders were close family members and the corporation was essentially a conduit for holding property belonging to the family. An exception to the general rule is also found where plaintiff suffers injury distinct from that of other shareholders. See Sax v. World Wide Press, 809 F.2d 610, 614 (9th Cir. 1986). Here, the other shareholders – namely defendants Larry and John Thew – did not suffered the same injury as plaintiff resulting from the conveyance of corporate assets without consideration, as they conveyed the assets into a trust for which they are beneficiaries, and they stand to reap substantial benefit from the subsequent sale of such properties. In fact, they are in a better position than they would have been had the assets remained with the corporation.

Moreover, a minority shareholder may sue for money damages where a corporation sells all or substantially all of its assets, the sale is not made in the usual or regular course of business, and the corporation fails to give plaintiff proper notice of the sale. See, e.g., Collins v. Telcoa Int'l Corp., 283 A.D.2d 128, 129 (2nd Dep't 2001) (reversing dismissal of claims based on breach of fiduciary duty and aiding and abetting a breach of fiduciary duty). Here, the fraudulent conveyances alleged in the complaint disposed of substantially all of Taconic 82's assets, without the consent of plaintiff and not in the usual course of business. Thus, the individual claim for breach of fiduciary duty should stand.

## POINT V

## PLAINTIFF IS A CREDITOR WITH STANDING TO PROSECUTE COUNTS I AND II

**A.   Plaintiff's Claims for Fraudulent Conveyances Must Stand Because Plaintiff is a Creditor**

The question raised by defendants' motion with respect to plaintiff's standing to prosecute her claims under Article 10 of the New York Debtor and Creditor Law (New York Debtor & Creditor Law §§270-281) should be easily resolved. Debtor & Creditor Law §270 defines a creditor as follows:

> "Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

8535-4\MMC

Debtor & Creditor Law §270 goes on to define "Debt" as follows:

> "Debt" includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent.

The two mirror image definitions are drawn in very broad terms. The question thus is whether, today, plaintiff has any claim against the Estate of Richard Thew arising out of the conveyances made by Richard Thew during his lifetime. The answer to that question is clearly yes. When Richard Thew exceeded the authority granted to him as Trustee under the Gerald Thew Family Trust, he rendered himself personally liable for a surcharge as fiduciary. See, e.g., Estate of Janes, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 1997 NY Lexis 758 (1997). Because the definition of creditor includes one holding an unmatured and unliquidated claim, the fact that Richard Thew's liability was not established prior to his death, and in fact has not been established to this day, does not render Melinda Thew Cooper not a creditor.

Holders of unliquidated personal injury claims have standing under the Debtor and Creditor Law to prosecute fraudulent conveyance actions. See, e.g., Gatto v. Boyd, 137 Misc. 156, 241 N.Y.S. 626, 1930 N.Y.Misc. Lexis 1229 (Sup. Ct. Kings Co. 1930). There the Court held that:

> "the plaintiff here, of course, is not certain of recovery in his suit for the negligence of the defendant. But at least his claim on the defendant is a contingent one. As such, I think he comes within the definition of "creditor" as set forth in §270 in the Debtor and Creditor Law. . . . The general rule has been aptly expressed in 15 Corpus Juris, 1374, where it is stated: "the term 'creditor' has been held sufficiently comprehensive to include those holding claims arising out of tort; persons entitled to damages for torts - being broadly construed in furtherance of the purposes of remedial statutes. When used in this sense, the term includes not only the holder of a certain and fixed present debt, but everyone having a right to damages capable of judicial enforcement, whether growing out of tort or contract."

Boyd, 173 Misc. 156; 241 N.Y.S. 626 at 628

Of similar import is Cablevision Systems Development Co. v. Annasonic Electronic Supply, 1984 Dist. Lexis 15789 (E.D.N.Y. 1984).

8535-4\MMC

In addition to the well established law and the clear meaning of the statute, there are sound reasons why plaintiff should be permitted to prosecute this fraudulent conveyance action. If she is forced to wait to institute an action for fraudulent conveyance until she has achieved a money judgment against her brothers as successor trustees under the Gerald Thew Family Trust, or against them as executors of their father's estate, based upon their father's estate's liability for the breaches of fiduciary duty committed by Richard during his life, it would appear highly likely that the statute of limitations would have expired before she had acquired judgment creditor standing. As the quote from Corpus Juris set forth above establishes, the fraudulent conveyance statute is remedial in nature and should be construed in order to effectuate its purposes rather than to frustrate its purposes. Here, where the conveyances were clearly without consideration and made to related entities, the conveyances bear many of the "badges of fraud". See, Shelly v. Doe, 249 A.D.2d 756, 758, 671 Misc2d 803, 806 (3d Dept. 1998).

Defendants fail to cite any authority for the notion that a beneficiary may not be a creditor. Accordingly, plaintiff has standing for the reasons set forth above to prosecute the fraudulent conveyance claims.

**B.     Failure to Verify Allegations of the Complaint May Be Remedied
        and Does Not Mandate Dismissal**

The moving defendants correctly note that the complaint was not verified, and that it should have been verified pursuant to F.R.C.P. §23.1.

The appropriate remedy, however, is not to dismiss the action, but, rather to require the plaintiff to submit a verifying affidavit. As this Court held in Zucker v. Katz, 708 F.Supp. 525, 1989 U.S. Dist. Lexis 2157 (S.D.N.Y. 1989):

> This Court has stated that "the verification requirement of Rule 23.1 is intended only to clear the Courts of strike suits and not to be a general impediment to shareholder derivative actions. Markowitz v. Brody, [90 F.R.D. 542, 549-550 (S.D.N.Y. 1981)] (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 371, 15 L.Ed.2d. 807, 86 S.Ct. 845 (1966)) In an action such as this that does not on its face appear to be a strike suit, and where the failure to verify the complaint was merely an oversight, a Court may decline to dismiss the complaint and

8535-4\MMC

> instead require the plaintiff simply to submit a verifying affidavit . . . If the plaintiff in this action files another complaint to cure the Counts dismissed without prejudice, then that complaint should comply with Federal Rule of Civil Procedure 23.1. Alternatively, plaintiff may simply file and an affidavit within thirty (30) days of this opinion to comply with the requirements of Rule 23.1."

<u>Zucker v. Katz</u>, 708 F.Supp. 525, 534-535. (citations omitted)

Even the case annexed as <u>Exhibit "E"</u> to the Beller Affidavit permits the plaintiff to file a verified complaint within twenty-one (21) days from the date of the Order "dismissing" the complaint for failure to have it verified.

The undersigned assures this Court that the lack of a verification was purely an oversight, and if this Court retains jurisdiction of this matter, a curative affidavit will promptly be filed.

Accordingly, the complaint should not be dismissed, but rather plaintiff should be permitted an opportunity to cure the defect.

**C.    Plaintiff Has Stated Valid Claims for Aiding and Abetting Breach of Fiduciary Duty**

Again, plaintiff has no substantial dispute with defendants about the test to be applied to the pleadings. The question is whether the pleading on its face meets the test articulated in, *inter alia*, <u>S&K Sales Co. v. Nike</u>, 816 F.2d 843, 1987 U.S. App. Lexis 5275 (2d Circuit 1987).

The complaint, when read as a whole, adequately ties together the conduct of Larry and John Thew, as sons of Richard Thew, and the sole remainder beneficiaries of the R.W. Thew Trust, which received the largest portion of the benefit from Richard Thew's breaches of fiduciary duty. The complaint satisfies the particularity requirements. As the Court stated in <u>M&T Mortgage Corp. v. Miller</u>, 323 F.Supp.2d 405, 2004 US Dist. Lexis 12523 (E.D.N.Y. 2004):

> "Plaintiffs need not at this stage, plead scienter with great specificity, . . . and conclusory allegations of scienter are adequate where a complaint provides a minimal factual basis that gives rise to a strong inference or fraudulent intent . . . This 'strong inference' may be demonstrated by showing that defendants had a motive and opportunity to commit fraud or strong circumstantial

8535-4\MMC

> evidence of conscious misbehavior . . .When assessing the specificity of a fraud complaint, the reviewing Court should read the complaint liberally, drawing all inferences in favor of the non-moving party. Cosmas v. Hassett, 886 F.2d 8 (2d Circuit 1989).

M&T Mortgage Corp. v. Miller, 323 F.Supp.2d 405 at 412.

Here, Count VIII adequately sets forth, when read together with all of the other allegations of the complaint, a claim for aiding and abetting the breach of fiduciary duty.

**D.     Plaintiff Has Stated a Legally Cognizable Claim for Conspiracy to Defraud**

Defendant's contention that "New York law does not recognize a cause of action for conspiracy to defraud," see Memorandum of Law in Support of Motion to Dismiss at 22, is a misstatement of the law.  While it is true that conspiracy to defraud *alone* will not support an independent cause of action, where underlying fraudulent acts are properly alleged, those who conspire to commit such wrongful acts will be held liable for conspiracy to defraud.  Fraudulent conveyances or transfers, such as those alleged in this case, can provide the necessary predicate for a conspiracy to defraud claim.  See, e.g., Werbelovsky v. Rosen, 260 A.D. 222, 226 (2nd Dep't 1940) (affirming trial court's refusal to dismiss conspiracy to defraud claim based on fraudulent transfers); Saxton v. Sebring, 96 A.D. 570, 573 (4th Dep't 1904) (where transfer was made for inadequate consideration and bearing all the usual indicia of fraud, prima facie cause of action for conspiracy existed against those who acted collusively with the transferor).

**E.     Plaintiff Has Stated a Valid Claim for Unjust Enrichment**

Defendants attempt to argue that the Complaint fails to allege a benefit to defendants John and Larry Thew sufficient to state a claim for unjust enrichment.  Clearly, the Complaint alleges that a benefit was received, and alleges the circumstances that resulted in the receipt of such benefit.  See Compl. ¶¶ 181-90.  Defendants argue that no real benefit has yet been received, which is an issue of fact not appropriately decided on a motion to dismiss.

Even if this factual inquiry were proper at this stage, it is simply untrue that Defendants have not received a benefit.  On December 29, 2003, Richard Thew died.

8535-4\MMC

According to the terms of the Trust Agreement, upon Richard's death, the trust was to terminate and Larry and John Thew – who were both successor trustees and sole beneficiaries – were to receive the corpus of the trust. See DuVall Affidavit, Exhibit "4". Since discovery has not yet occurred in this action, it is not known if Larry and John Thew actually distributed the corpus to themselves, but certainly they could have under the terms of the Trust. Clearly, then, they have received the "benefit" of the real estate conveyances to the Trust, as their receipt and ownership of the trust properties was contingent upon nothing other than their own action.

Similarly, the Complaint alleges that Defendants received a benefit from the sale of the Orchard Property to the Curry Family Partnership. See Compl. ¶ 195-198. It is undisputed that only one-third of the proceeds of that sale remain. Despite numerous requests, the sellers attorneys – defendant Reed Smith – have failed to account for the distributions that were made from the proceeds of the sale. Thus, it is uncertain whether distributions were made to defendants John and Larry Thew. At the very least, discovery is needed to determine the extent of the benefit actually received by defendants, and defendants' motion must be denied.

## CONCLUSION

For all the foregoing reasons, the Thew Defendants' motion should be denied.

DATED:     Poughkeepsie, New York
           February 2, 2005

                                        Yours, etc.

                                        McCABE & MACK LLP


                                        By: _____
                                             RICHARD R. DuVALL (RRD-8967)
                                        Attorneys for Plaintiff
                                        63 Washington Street
                                        P.O. Box 509
                                        Poughkeepsie, NY 12602-0509
                                        Tel: (845) 486-6800

8535-4\MMC

16