LEXSEE 2000 U.S. DIST. LEXIS 18998

**FOUR FINGER ART FACTORY, INC., Plaintiff, - AGAINST - RONALD A. DINICOLA, INTERNATIONAL MANAGEMENT, INC., and GOAT, INC., Defendants.**

99 Civ. 1259 (JGK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2000 U.S. Dist. LEXIS 18998*

December 21, 2000, Decided
January 9, 2001, Filed

**DISPOSITION:** [*1] Defendants' motion to dismiss complaint granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For FOUR FINGER ART FACTORY, INC., plaintiff: Matthew D. Brinckerhoff, Emery, Cuti, Brinckerhoff & Abady P.C., New York, NY.

For INTERNATIONAL MANAGEMENT INC., defendant: John R. Sachs, Jr., Ohrenstein & Brown, New York, NY.

**JUDGES:** John G. Koeltl, United States District Judge.

**OPINIONBY:** John G. Koeltl

**OPINION:**

    **OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

    This action arises out of a contract between the plaintiff, Four Finger Art Factory, Inc. ("Four Finger"), and the defendant, Greatest of All Times, Inc. ("GOAT"), pursuant to which Four Finger allegedly had rights to promote celebrity concerts related to the themes contained in a book co-authored by Muhammad Ali ("Ali"). The defendants previously moved to dismiss the plaintiff's complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* and *9(b)*. The Court granted the motion in part and denied it in part, dismissing some of the plaintiff's claims without prejudice to filing an amended complaint. See *Four Finger Art Factory, Inc. v. DiNicola, 2000 U.S. Dist. LEXIS 1221, No. 99 Civ. 1259, 2000 WL 145466* (S.D.N.Y. Feb. 9, 2000). The plaintiff has now submitted [*2] an amended complaint.

    In its amended complaint, the plaintiff alleges that GOAT failed to fulfill its obligations under its contract with the plaintiff (the "GOAT contract"), and that GOAT and its attorney, defendant Ronald A. DiNicola ("DiNicola") fraudulently induced the plaintiff to enter into the GOAT contract through a number of misrepresentations. The plaintiff also alleges that DiNicola and defendant International Management, Inc. ("IMG") tortiously interfered with Four Finger's contract with GOAT, and that DiNicola, GOAT, and IMG tortiously interfered with a contract between Hoffmann Concerts, Inc. ("Hoffmann") and the plaintiff (the "Hoffman contract"). The plaintiff also claims that DiNicola and IMG tortiously interfered with its later attempts to revive the GOAT contract.

Case 7:04-cv-08928-KMK-LMS    Document 22-3    Filed 02/08/2005    Page 2 of 7

Page 2
2000 U.S. Dist. LEXIS 18998, *

The plaintiff advances the following five claims: First Claim: breach of contract against GOAT; Second Claim: fraud and misrepresentation against GOAT and DiNicola; Third Claim: tortious interference with the GOAT and Hoffman contracts against DiNicola and IMG; Fourth Claim: tortious interference with the Hoffman contract against GOAT; and Fifth Claim: tortious interference with prospective economic advantage [*3] against DiNicola and IMG.

The defendants have moved to dismiss the plaintiff's second through fifth causes of action pursuant to *Fed. R. Civ. P. 12(b)(6) and 9(b)*. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

I.

On a motion to dismiss, the allegations in the complaint are accepted as true. See *Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998)*. In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. See *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)*. The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985)*. Therefore, the defendants' present motion should only be granted if it appears that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957);* [*4] *Grandon, 147 F.3d at 188;* see also *Goldman, 754 F.2d at 1065*.

In deciding the motion, the court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. See *Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991); Skeete v. IVF America, Inc., 972 F. Supp. 206, 208 (S.D.N.Y. 1997)*.

The facts in this case have already been described in the Court's previous opinion, see *Four Finger Art Factory, Inc., 2000 WL 145466*, familiarity with which is assumed. The allegations are summarized here to the extent necessary to understand the defendants' current motion to dismiss the amended complaint.

In 1996, Muhammad Ali and Thomas Hauser published a book entitled "Healing: A Journal of Tolerance and Understanding." (Am. Compl. P 12.) In March 1997 Four Finger signed a contract with GOAT [*5] and Hauser to promote celebrity concerts as part of the Muhammad Ali World Healing Project, a project related to this book. (Am. Compl. P 34.) The contract gave Four Finger promotional, broadcasting, merchandising, and other rights over as many as four such concerts (Am. Compl. P 37), and it also gave Four Finger an exclusive license to use the name and approved likeness of Ali in connection with concert activities until at least February 24, 1999. (Am. Compl. P 39.) At the same time as it signed the contract with GOAT, the plaintiff entered into a separate agreement with Hoffmann, securing Hoffman's participation in the financing, development, production and promotion of the concerts. (Am. Compl. P 34.)

The plaintiff alleges that notwithstanding the contract with Four Finger, in April 1997 Ali or GOAT, or both of them, entered into a representation agreement with IMG which gave IMG exclusive rights to use Ali's name, likeness, and image. (Am. Compl. PP 54-56.) The plaintiff alleges that although IMG learned of Four Finger's own contractual rights in June 1997 (Am. Compl. P 66), IMG represented that it was Ali's exclusive agent, (Am. Compl. P 77), and that the concerts promoted by [*6] Four Finger would never happen. (Am. Compl. P 78.)

The plaintiff alleges a series of acts by the defendants following the agreement with IMG to undermine the celebrity concerts and Four Finger's promotion of them. The plaintiff alleges that in May 1997 DiNicola prohibited efforts by Hoffmann to obtain corporate sponsorship for the concerts. (Am. Compl. P 62.) After June 1997, GOAT and DiNicola, as well as Ali, refused all of Four Finger's requests for their assistance in promoting the first concert scheduled for the Fall of 1997. (Am. Compl. P 86.) Beginning in July 1997 IMG told individuals in the entertainment industry, who were being solicited by Four Finger and/or Hoffman for assistance with the concerts, that the concert would not take place. (Am. Compl. P 87.) In July 1997 DiNicola refused approval of a promotional website for the concert. (Am. Compl. P 94.) In August 1997 DiNicola and GOAT also withheld their approval of an arrangement with Christies to auction Ali memorabilia in connection with the concerts. (Am. Compl. P 91.) In the same month DiNicola ordered removal of information from concert promotional materials which provided contact information for GOAT and Ali. (Am. [*7] Compl. P 95.) In September 1997, after various celebrities were slated to attend the concert (Am. Compl. PP 97-98), and after Nelson Mandela and others were advised they would be receiving an award (Am. Compl. P 99), DiNicola informed the plaintiff that Ali would not attend a pre-concert press conference (Am. Compl. P 101), and

GOAT and DiNicola refused to approve the concert advertisements necessary for a television deal. (Am. Compl. PP 103-09).

In September 1997 Hoffmann wrote DiNicola to advise him that it was terminating its promotion of the Fall concert. (Am. Compl. P 111.) DiNicola thereafter informed Four Finger that GOAT would not extend the December 1, 1997 deadline for staging the first concert contained in the contract. (Am. Compl. P 116.) The plaintiff alleges that it attempted until July 1998, to no avail, to revive the contract with GOAT. (Am. Compl. P 130.)

II.

A.

Defendants DiNicola and GOAT first move to dismiss the plaintiff's second claim for relief, which alleges that DiNicola and GOAT knowingly made false statements to induce the plaintiff to enter into the GOAT contract. A claim for fraud under New York common law based on false statements consists of the [*8] following elements: (1) a material false representation of an existing fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance; (5) and damages. See *Sudul v. Computer Outsourcing Serv., 917 F. Supp. 1033, 1043 (S.D.N.Y. 1996)*(collecting cases). While a fraud claim may not simply allege that a contracting party did not intend to meet its obligations, see, e.g., *International Cabletel, Inc. v. Le Groupe Videotron Ltee, 978 F. Supp. 483, 486 (S.D.N.Y. 1997)*, a fraudulent inducement claim "can be supported by a false statement of present fact, or by a false statement of future intent which concerns a matter collateral to a contract between the parties." *Id. at 491.*

The plaintiff alleges that the defendants committed fraud through the following acts:

> (a) misrepresenting that DiNicola and GOAT had informed 4FAF of all other agreements or potential agreements that might conflict in any fashion with or affect the rights granted in the GOAT Contract; (b) misrepresenting that Mr. And Mrs. Ali would make their best efforts to procure talent, specifically that Mrs. Ali and Howard Bingham would [*9] work the phones to assist in obtaining first class performers; (c) misrepresenting that DiNicola would utilize his firm's expertise and contacts to secure major musical talent; and (d) misrepresenting that GOAT and Mr. Ali would act reasonably and in good faith, notwithstanding the fact that GOAT reserved absolute discretion over television and certain types of merchandising under the GOAT Contract.

(Am. Compl. P 141.)

The alleged misrepresentations described in subsections (a), (b), and (d) of the amended complaint, were all alleged in the original complaint. (Complaint P 108.) The court dismissed the fraud and misrepresentation claims based on those alleged statements because they concerned matters that were not collateral to the GOAT contract and duplicated the breach of contract claim. See *Four Finger Art Factory, Inc., 2000 WL 145466,* at *5; see also *J.E. Morgan Knitting Mills, Inc. v. Reeves Brothers, Inc., 243 A.D.2d 422, 663 N.Y.S.2d 211 (App. Div. 1997)* (holding that fraud claim which duplicates claim for breach of contractual warranty against undisclosed liabilities fails to state a cause of action). The plaintiff does not allege [*10] new facts or point to any authority that the Court overlooked that would justify a reconsideration of this decision. The plaintiff's fraud and misrepresentation claims based on those statements are therefore dismissed with prejudice.

In contrast, subsection (c) of paragraph 141 of the amended complaint, newly alleges that DiNicola misrepresented that he would use his firm and its contacts to secure major musical talent. The defendants first argue that the plaintiff's claim based on DiNicola's alleged statement should be dismissed because this is a statement of future intent which is not collateral to the GOAT contract because it is subsumed under the provision requiring GOAT to "make reasonable efforts in assisting with publicity and obtaining talent. . . ." (GOAT Contract P 2(d).) The gist of the argument is that DiNicola's alleged statement was a promise to procure talent in his capacity as an agent of GOAT. However, the amended complaint's allegation that "DiNicola promised to personally utilize his and his firm's expertise and contacts to secure major musical talent for the concert," (Am. Compl. P 31) can be read as a personal promise by DiNicola to act beyond his agency relationship [*11] with GOAT in obtaining talent. DiNicola's statement is not a reiteration of GOAT's obligations specified in the contract but a promise as to what he would do. As an attorney DiNicola would not be personally liable under a contract negotiated for his client unless he personally assumed liability. See *Sefi Fabricators, Inc. v. Tillim, 79 Misc. 2d 213, 360 N.Y.S.2d 146, 146 (App. Term 1973)*(per curiam); see also *Aetna Casualty and Surety Co. v. Hambly Constr. Co., 65 A.D.2d 612, 409 N.Y.S.2d 552, 553 (App. Div. 1978).* The amended

Case 7:04-cv-08928-KMK-LMS   Document 22-3   Filed 02/08/2005   Page 4 of 7

Page 4
2000 U.S. Dist. LEXIS 18998, *

complaint sufficiently alleges a fraud claim based on DiNicola's statement because it can be read as a fraudulent promise by DiNicola about what he would do and that promise is collateral to the GOAT contract.

The defendants' argument that the general merger clause in the GOAT contract (GOAT Contract at P 27) precludes a finding that GOAT reasonably relied on DiNicola's oral representation is incorrect. Under New York law, a general merger clause does not preclude a claim for fraudulent inducement, see, e.g., *Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993); Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 485 N.E.2d 974, 976, 495 N.Y.S.2d 309 (N.Y. 1985);* **[*12]** *Danann v. Realty Corp. v. Harris, 5 N.Y.2d 317, 157 N.E.2d 597, 598-99, 184 N.Y.S.2d 599 (N.Y. 1959),* unless it contains a disclaimer with respect to the specific representation, see, e.g., *Danann, 157 N.E.2d at 599,* or a waiver of any challenges to the validity of the contract itself. See, e.g., *Manufacturers Hanover Trust Co., 7 F.3d at 317.* The GOAT contract does not contain either provision.

DiNicola's other arguments to dismiss the fraud claim against him for failure to state a claim are without merit. First, DiNicola argues that the plaintiff suffered no damages because it eventually procured the needed talent. But the plaintiff's allegation is that it was damaged because it was fraudulently induced into entering a contract it would not have entered into without DiNicola's alleged misrepresentation. (Am. Compl. P 145.) Under New York law, the plaintiff is entitled to damages for any loss it suffered from such an inducement. See *Deerfield Comm. Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 502 N.E.2d 1003, 1004, 510 N.Y.S.2d 88 (N.Y. 1986).* Moreover, it could not be decided on a motion to dismiss whether **[*13]** the plaintiff did in fact incur any damages.

Second, while DiNicola argues that his status as an attorney immunizes him from liability to the plaintiff, DiNicola's role as an attorney provides no such immunity for a fraud and misrepresentation claim such as the one alleged in the amended complaint. See, e.g., *Connell v. Weiss, 1985 U.S. Dist. LEXIS 21638, No. 84 Civ. 2660, 1985 WL 428, at \*3 (S.D.N.Y. March 19, 1985); Factory Point Nat'l Bank v. Wooden Indian, Inc., 198 A.D.2d 563, 603 N.Y.S.2d 216, 218 (App. Div. 1993).*

Read in the light most favorable to the plaintiff, the fraud and misrepresentation claim against DiNicola based on his alleged statement that he would personally obtain talent for GOAT cannot be dismissed for failure to state a claim. The plaintiff has not, however, alleged a claim against GOAT for fraud or misrepresentation.

B.

DiNicola also argues that the plaintiff's allegation of fraud does not meet the particularity requirement of *Fed. R. Civ. P. 9(b),* which provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Fed. R. Civ. P. 9(b).* To meet the requirements of Rule 9(b), **[*14]** a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).* Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).* This strong inference can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id; accord *PI, Inc. v. Ogle, 932 F. Supp. 80, 84 (S.D.N.Y. 1996).*

Defendant DiNicola argues that the plaintiff has not alleged that he had any motive to commit fraud and that the plaintiff has failed to allege sufficient facts giving rise to a strong inference of fraudulent intent. DiNicola argues that he had no motive to commit fraud because he was acting simply **[*15]** as a lawyer whose fee was not contingent on the successful negotiation of the GOAT agreement. A general allegation that DiNicola was motivated to commit fraud in the hope of obtaining a fee is insufficient to establish fraudulent intent under Rule 9(b). See, e.g., *Castillo v. Dean Witter Discover & Co., 1998 U.S. Dist. LEXIS 9489, No. 97 Civ. 1272, 1998 WL 342050, at \*10 (S.D.N.Y. June 25, 1998); ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 245 n.51 (S.D.N.Y. 1997).* The plaintiff has failed to allege any facts in the amended complaint or in response to the present motion to show that DiNicola had any motive to commit fraud.

Moreover, the plaintiff has not alleged facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness by DiNicola. There are no facts alleged to show that DiNicola's statement that he would personally obtain talent was intentionally or recklessly false. There are no facts alleged to show that DiNicola did not intend to assist in obtaining talent when he allegedly made the challenged statement. Any allegations in the amended complaint that DiNicola acted with conscious disregard for the truth are conclusory and vague and **[*16]** are insufficient to allege fraudulent intent under Rule 9(b).

2000 U.S. Dist. LEXIS 18998, *

Thus, while it is possible for the plaintiff to state a fraud and misrepresentation claim based on DiNicola's statement, the plaintiff's fraud and misrepresentation claim against DiNicola must be dismissed because it does not meet the requirements of *Fed. R. Civ. P. 9(b)*. However, because it cannot be said that there are no set of facts that could be alleged to satisfy the pleading requirement of *Fed. R. Civ. P. 9(b)*, this claim against DiNicola is dismissed without prejudice to repleading.

III.

The defendants next move to dismiss the plaintiff's third claim for relief, which alleges that IMG and DiNicola knew of and tortiously interfered with the plaintiff's contracts with GOAT and Hoffman. Under New York law, the elements of a tortious interference with contract claim are "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996)*(citation omitted); accord *Union Carbide Corp. v. Montell N.V., 944 F. Supp. 1119, 1136 (S.D.N.Y. 1996)*. [*17] Moreover, the plaintiff "must allege that there would not have been a breach but for the activities of defendants." *Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990)*(internal citation and quotation omitted). In other words, the plaintiff must allege that the defendant was the motivating force behind the breach. See id.

A.

IMG moves for dismissal on two grounds. First, IMG argues that the plaintiff's claims of tortious interference are conclusory and vague. Second, IMG argues that the plaintiff has not alleged sufficiently that IMG was a "but for" cause of the alleged contract breaches by GOAT and Hoffman. Neither argument has merit.

IMG characterizes the plaintiff's description of its alleged interference as no more than "gossiping." But the amended complaint does allege that IMG took specific actions to interfere tortiously with the GOAT and Hoffman contracts. The plaintiff alleges that IMG acted in various ways to make performance of the GOAT and Hoffman contracts impossible such as by encouraging and inducing GOAT to breach the GOAT contract in various ways, promoting IMG rather than the plaintiff as the exclusive representative of Ali, [*18] and telling individuals in the entertainment industry who were being solicited by the plaintiff or Hoffman that the Fall Concert would not occur. (Am. Compl. PP 87, 154, 157.) While some of the allegations are broadly worded, the amended complaint's allegation that IMG tortiously interfered with the GOAT and Hoffman contracts is sufficient to survive a motion to dismiss.

IMG also argues that the plaintiff has not alleged that the actions of IMG were a "but for" cause of the alleged breaches of contract. IMG asserts that GOAT was already inclined to breach the contract, but the allegations in the amended complaint are sufficient to resist a motion to dismiss. The allegations in the amended complaint state that: (1) GOAT initially signed its contract with Four Finger (Am. Compl. PP 2, 34.); (2) IMG thereafter signed an alternative deal with GOAT (Am. Compl. PP 54-58); (3) IMG had an incentive to interfere with the GOAT contract because it conflicted with its interests (Am. Compl. PP 54-58, 67-75); (4) IMG acted to ensure that its contract would supersede the GOAT contract by interfering with the GOAT contract (Am. Compl. PP 154, 157); and (5) GOAT's contract breaches were effectuated, [*19] in part, at the behest of DiNicola and IMG. (Am. Compl. P 2.) These allegations are sufficient to establish "but for" causation. See, e.g., *Antonios A. Aleizopoulus and Assoc., Inc. v. Comcast Inter. Holdings, Inc., 100 F. Supp. 2d 178, 186-87 (S.D.N.Y. 2000)*. n1

> n1 The amended complaint sufficiently alleges "but for" causation with respect to IMG's interference with the Hoffman contract by alleging that as a result of IMG's and DiNicola's interference with the GOAT contract, Hoffman was unable to perform its obligations under the Hoffman contract. (Am. Compl. P 152.)

While the first amended complaint alleges that GOAT committed one or two minor breaches of the GOAT contract prior to when IMG became aware of the GOAT agreement in June 1997 (Am. Compl. PP 62-63), the complaint can be read to allege that GOAT was continuing to perform under the GOAT contract and that material breaches occurred after IMG knew of the contract. (Am. Compl. PP 80-114). This is not a case like *Mina Inv. Holdings, Ltd. v. Lefkowitz, 16 F. Supp. 2d 355, 360-61 (S.D.N.Y. 1998)*, [*20] adhered to on reconsideration, *184 F.R.D. 245, 256 (S.D.N.Y. 1999)*, where Judge Sweet found that the party to the contract was already inclined to breach the contract because it had breached it nine times before. Read in a light favorable to the plaintiff, the complaint sufficiently alleges that GOAT would have completed its obligations under the contract if IMG had not interfered.

IMG also claims that the plaintiff cannot argue that both IMG and DiNicola induced the breach of the GOAT and Hoffman contracts because there can only be one "but for" cause of a breach. This claim is unsupported. While IMG could not be liable for tortious interference of contract if it were undisputed that GOAT and Hoffman would have breached their respective contracts without its interference, more than one defendant can induce a breach of contract and be a "but for" cause of the breach of contract. See, e.g., *Union Carbide Corp., 944 F. Supp. at 1137-38* (plaintiff sufficiently alleged actions by several defendants as "but for" causes of a breach of contract). The plaintiff is entitled to develop the facts supporting its claim and the Court cannot conclude as a matter [*21] of law that IMG's actions were not a "but for" cause of the breaches of the GOAT and Hoffman contracts.

B.

DiNicola argues that he cannot be held liable for a tortious breach of the GOAT and Hoffman contracts because he acted as GOAT's attorney and is not a third party with respect to the GOAT contract.

Generally, attorneys can be held liable to third parties for tortious acts. See, e.g., *Callahan v. Callahan, 127 A.D.2d 298, 514 N.Y.S.2d 819, 821 (App. Div. 1987)*. However, in New York, "an attorney is not liable for inducing his principal to breach a contract with a third person, at least where it [sic] is acting on behalf of his principal within the scope of his authority. Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client. . . ." *Kline v. Schaum, 174 Misc. 2d 988, 673 N.Y.S.2d 992, 993 (App. Div. 1997)*(quoting *Burger v. Brookhaven Med. Arts Bldg., Inc., 131 A.D.2d 622, 516 N.Y.S.2d 705, 708 (App. Div. 1987)*). An attorney can not be liable to a third party [*22] for advising his client to breach a contract. See, e.g., *Beatie v. DeLong, 164 A.D.2d 104, 561 N.Y.S.2d 448, 451-52 (App. Div. 1990); Goldner v. Sullivan, 105 A.D.2d 1149, 482 N.Y.S.2d 606, 607 (App. Div. 1984)*. Moreover, if an attorney or any other agent of a contracting party takes actions that induce a breach of contract while acting within the scope of an agency relationship and is not motivated by personal gain, the attorney or agent is not liable to the third party for tortious interference with contract. See, e.g., *New Dimensions Spa, Inc. v. Fitness Place Rockville Centre, N.Y., Inc., 187 A.D.2d 493, 589 N.Y.S.2d 189, 190 (App. Div. 1992); Kartiganer Assoc. v. Town of New Windsor, 108 A.D.2d 898, 485 N.Y.S.2d 782, 783-84 (App. Div. 1985)*; see also *Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1080 (2d Cir. 1977)*(describing types of fraudulent conduct that are outside the scope of an attorney's employment).

These principles shield DiNicola from liability for allegedly interfering with the GOAT contract. The amended complaint alleges that DiNicola interfered with the GOAT contract in [*23] two ways, by "(i) encouraging, persuading, and inducing GOAT to breach its contract . . . and (ii) negotiating and consummating a competing agreement between IMG and GOAT/Ali." (Am. Compl. P 156.) Negotiating an alternative contract and advising GOAT with respect to its contract are not acts that DiNicola can be liable for because they are within the scope of his duties as an attorney. There is no allegation that DiNicola was acting outside of his agency relationship or was motivated by personal gain.

The plaintiff has also failed to allege a viable claim that DiNicola tortiously interfered with the Hoffman contract. The amended complaint alleges that DiNicola tortiously interfered with the Hoffman contract by interfering with the GOAT contract. (Am. Compl. P 152.) There is no allegation that DiNicola interfered with the Hoffman contract in any other way. Because DiNicola acted within the scope of his agency relationship with GOAT with respect to the GOAT contract, any secondary effect that those acts had on the Hoffman contract is also not actionable.

The defendants' motion to dismiss the tortious interference with contract claims against DiNicola is granted. However, because this [*24] Court cannot determine that there are no set of facts that could establish that DiNicola acted outside the scope of his employment in interfering with the GOAT and Hoffman contracts, these claims are dismissed without prejudice to repleading.

IV.

GOAT argues that the fourth claim should be dismissed because Four Finger has not alleged adequately that GOAT tortiously interfered with the plaintiff's contract with Hoffman. GOAT essentially argues that it is not a third party with respect to the Hoffman contract because the plaintiff's contract with GOAT cannot be separated from the plaintiff's contract with Hoffman. The amended complaint does allege that the GOAT and Hoffman contracts are interrelated. (Am. Compl. P 34.) However, even if the contracts are somehow interrelated, the defendants do not sufficiently explain why this would mean that GOAT is not a third party with respect to the separate contract between the plaintiff and Hoffman. While GOAT cannot tortiously interfere with its own contract, the plaintiff has alleged that GOAT interfered with the separate contract between the plaintiff and Hoffman. According to the amended complaint, the Hoffman

contract was between the plaintiff [*25] and Hoffman and did not include GOAT. (Id.) GOAT's motion to dismiss the plaintiff's fourth cause of action is therefore denied.

V.

In its Memorandum of Law in opposition to the defendants' motion to dismiss, the plaintiff proposed to dismiss voluntarily without prejudice its fifth claim for relief alleging tortious interference with prospective economic advantage against DiNicola and IMG. The defendants rejected this proposal and asked that the Court dismiss this claim with prejudice. The plaintiff has not attempted to defend this claim.

In order to state a claim for interference with a prospective economic advantage, the plaintiff "must show (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994)*(citations omitted).

The plaintiff's claim as alleged in the amended complaint appears to be that DiNicola and IMG prevented an attempt by Mrs. Ali to revive the contract between Four Finger and GOAT. However, the complaint's [*26] description of Mrs. Ali's wishes is insufficient to allege the existence of a current business relationship. Moreover, there is no allegation that the defendants acted solely to harm the plaintiff. The amended complaint details rather that IMG and DiNicola, as an agent of GOAT, had competitive interests that would be served by IMG's continuing contract with GOAT, rather than a renewed contract with Four Finger. Further, there is no allegation that either DiNicola or IMG used wrongful means to injure any business relationship. The defendants' arguments are correct and unopposed. Therefore, the plaintiff's fifth claim is dismissed with prejudice.

CONCLUSION

For all of the foregoing reasons, the defendants' motion to dismiss the complaint is granted in part and denied in part.

1. The motion by GOAT and DiNicola to dismiss the plaintiff's second cause of action is granted. The fraud and misrepresentation claims based on paragraphs 141(a), (b), and (d) of the amended complaint are dismissed with prejudice. The fraud and misrepresentation claim based on paragraph 141(c) of the amended complaint is dismissed without prejudice to repleading.

2. IMG's motion to dismiss the plaintiff's third [*27] cause of action with respect to the tortious interference with contract claims against IMG is denied.

3. DiNicola's motion to dismiss the plaintiff's third cause of action with respect to the tortious interference with contract claims against DiNicola is granted. These claims are dismissed without prejudice to repleading.

4. GOAT's motion to dismiss the plaintiff's fourth cause of action is denied.

5. The defendants' motion to dismiss the plaintiff's fifth cause of action is granted. The plaintiff's fifth cause of action is dismissed with prejudice.

6. Any amended complaint shall be in conformity with this opinion and filed within twenty (20) days of the date of this opinion.

**SO ORDERED.**
Dated: New York, New York

12/21/00

**John G. Koeltl**

**United States District Judge**